[No. G021034. Fourth Dist., Div. Three. Mar. 16, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
CESAR M. HERRERA, Defendant and Appellant.

**COUNSEL**

Joyce M. Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Laura W. Halgren and Frederick B. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SILLS, P. J.**—Cesar M. Herrera participated in a gang-related shooting in which a young boy and a man were injured. Herrera challenges the sufficiency of the evidence to support his convictions for conspiracy to commit murder and attempted premeditated murder; he also attacks the jury instructions pertaining to those counts. He claims the sentencing court erred by imposing an eight-month term for a gang enhancement on one of the attempted murder counts and by failing to stay execution of sentence on other counts pursuant to Penal Code section 654.[1] We affirm the convictions but modify the sentence to strike the eight-month gang enhancement on the

---

[1]Penal Code section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." All further section references are to the Penal Code unless otherwise stated.

attempted murder count, and to stay execution of sentence on counts 4 through 9.

## FACTS

Herrera was a member of West Myrtle Street, a criminal street gang. In September 1995, a member of West Myrtle was killed by a rival gang, Middleside. West Myrtle then retaliated by shooting Jesse Ortega Kennedy of Middleside a few days later. A day after that, several members and friends of West Myrtle were congregated at a house in Santa Ana when shots rang out.[2] One of the West Myrtle members jumped into his car—a black Mustang lacking its "t-tops"—and raced over to where Herrera was socializing with his girlfriend, Cheryl Dorado. Herrera climbed into the front passenger seat, telling Dorado that his "home boys were after the guys."[3] They took off for a known Middleside hangout.

The Mustang approached the home of Kennedy's mother, and Middleside members could see two people in the car: the driver and a passenger holding a gun. Three shots were fired from the car as it drove by the first time. One bullet struck an 11-year-old boy, scraping his right arm. Another bullet struck a man in the left shoulder, breaking a bone. The Mustang then made a U-turn and returned for a second pass, during which approximately 10 additional shots were fired. No further injuries were inflicted but three parked vehicles were struck by bullets.

A citizen flagged down Santa Ana Police Officer Martha Shirey and pointed out a black Mustang as the car responsible for the drive-by. The brake lights were on, and it appeared to Shirey that it had just pulled into a driveway. As she watched, the driver leaped from the car and fled despite Shirey's commands to stop. She then arrested Herrera, the front seat passenger.

Herrera told Shirey that he "didn't do anything," but two semiautomatic handguns—a Luger 9-millimeter and a Beretta .25-caliber—were found on the Mustang's front floorboard. Herrera's hands were tested, revealing gunshot residue. Bullet casings found at the scene matched the Luger[4] and the Beretta.

---

[2] This was not the first attack on this residence. A prior shooting caused one death and injured a neighbor's son.

[3] Although Dorado originally denied this statement, her memory was refreshed at trial with a tape and transcription of her statement to the police.

[4] This Luger was also tied to the Kennedy murder which occurred a day before.

Herrera was convicted of conspiracy to commit murder, two counts of attempted premeditated murder, two counts of assault with a firearm, three counts of shooting at an unoccupied vehicle, and one count each of discharging a firearm at an inhabited dwelling and street terrorism.[5] In addition, the jury found that Herrera personally used a firearm, that he committed the two attempted murders with premeditation and deliberation, and that all special allegations were true as alleged.[6] He was sentenced to a life term for one count of attempted premeditated murder, enhanced with a four-year term for using a gun, and then a consecutive life term for the second attempted murder charge, likewise enhanced with a sixteen-month term for the gun use and an eight-month term for the gang enhancement under section 186.22, subdivision (b)(1).[7] The sentence on the conspiracy to commit murder was stayed pursuant to section 654. All other terms were ordered to run concurrently with Herrera's sentences on the attempted murder counts.

DISCUSSION

I

*Sufficiency of Evidence for Attempted Murder*

 Herrera contends the evidence is insufficient to support the verdict that he committed attempted premeditated murders. He relies upon the oft-cited test found in *People v. Anderson* (1968) 70 Cal.2d 15, 26-27 [73 Cal.Rptr. 550, 447 P.2d 942], which sets forth three categories of evidence for a reviewing court to consider with respect to premeditation and deliberation: (1) prior planning activity; (2) motive; and (3) the manner of killing.[8] These factors are "not a sine qua non to finding first degree premeditated

---

[5]The information did not tie the attempted murder counts to specific victims even though two innocent bystanders were injured. Instead, the prosecution distinguished the two counts for attempted murder by arguing that each time the Mustang drove past and fired was a separate incident of attempted murder.

[6]Prior to trial, Herrera pleaded guilty to count 10, receiving stolen property. The court also granted the prosecutor's motion to dismiss the gang enhancements attached to the counts of shooting at unoccupied vehicles.

[7]Section 186.22, subdivision (b)(1) states: "Except as provided in paragraph (4), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one, two, or three years at the court's discretion."

[8]We do not distinguish between attempted murder and completed first degree murder for purposes of determining whether there is sufficient evidence of premeditation and deliberation. (See, e.g., *People v. Brito* (1991) 232 Cal.App.3d 316, 323-324 [283 Cal.Rptr. 441] [analyzing the sufficiency of evidence of deliberation and premeditation to support a convic-

murder, nor are they exclusive." (*People* v. *Perez* (1992) 2 Cal.4th 1117, 1125 [9 Cal.Rptr.2d 577, 831 P.2d 1159].) ██ Herrera concedes there is evidence of motive, but challenges the sufficiency of evidence for either of the remaining two prongs, planning and manner of killing. We affirm the convictions.

██ "Review on appeal of the sufficiency of the evidence supporting the finding of premeditated and deliberate murder involves consideration of the evidence presented and all logical inferences from that evidence . . . . Settled principles of appellate review require us to review the entire record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . from which a reasonable trier of fact could find that the defendant premeditated and deliberated beyond a reasonable doubt. [Citations.]" (*People* v. *Perez, supra,* 2 Cal.4th at p. 1124.)

██ The record contains ample evidence that Herrera planned the attempted murders. Expert gang testimony established that the Middleside and West Myrtle gangs were engaged in a war which claimed two lives within just two weeks of this shooting. Before getting into the Mustang, Herrera told his girlfriend his "home boys were after the guys," an apparent reference to his gang's need to retaliate for the shooting at the West Myrtle hangout. Herrera also admitted at trial that he got into the Mustang, knowing that the plan was to "fuck up" the enemy.[9] Moreover, he described how they cased the Middleside area before the drive-by shootings and then lied to the officer about having the guns. These facts overwhelmingly support the inference that the shootings were deliberately planned. (See, e.g., *People* v. *Gutierrez* (1993) 14 Cal.App.4th 1425, 1432-1437 [18 Cal.Rptr.2d 371] [attempted murder sustained where defendant stalked victims believed to be rival gang members, shot at victims five times, then fled and discarded gun].)

There is also ample evidence in the manner of the shooting to show a preconceived design to kill. Eyewitnesses stated only two people were in the Mustang and that the passenger—Herrera—did the shooting. The deliberate nature of the attempted murders is evidenced by the fact the Mustang made *two* passes by the apartment where numerous Middleside gang members had gathered, possibly to pay their respect to Kennedy's mother the day after his murder by West Myrtle gang members. Moreover, approximately a dozen

tion of attempted premeditated murder is the same as murder, using the three-prong test of *People* v. *Anderson, supra,* 70 Cal.2d at pp. 26-27].)

[9]Herrera's claim that he understood this phrase to mean a fistfight was properly rejected by the jury in view of the two recent murders as well as expert testimony that members of these gangs almost always used guns in their confrontations with rivals.

shots were fired from the Mustang during the drive-by, far more than would occur from an unplanned or accidental firing.

## II

### Sufficiency of Evidence for Conspiracy to Commit Murder

Herrera also argues that there is insufficient evidence to support his conviction for conspiracy to commit murder because there was no evidence of an agreement. The record belies his claim.

A conspiracy is an agreement between two or more people to commit a public offense. (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 156, p. 173.) A conviction for such requires proof of: (1) an agreement; (2) the specific intent to conspire; (3) the specific intent to commit the offense; and (4) an overt act towards achievement of that goal. (*People* v. *Liu* (1996) 46 Cal.App.4th 1119, 1128 [54 Cal.Rptr.2d 578].) These elements are sufficiently met by circumstantial evidence, particularly when those circumstances are the defendant's carrying out the agreed-upon crime. (*People* v. *Martin* (1983) 150 Cal.App.3d 148, 163 [197 Cal.Rptr. 655].)

The overt acts charged as part of the conspiracy can be circumstantial evidence of its existence. " 'Such acts may establish the purpose and intent of the conspiracy and relate back to the agreement whose purpose may be otherwise enshrouded in the hush-hush admonitions of the conspirators.' " (*People* v. *Manson* (1976) 61 Cal.App.3d 102, 126 [132 Cal.Rptr. 265], quoting *People* v. *Kobey* (1951) 105 Cal.App.2d 548, 562 [234 P.2d 251].)

Here, the conduct of Herrera and his driver unambiguously shows they conspired to murder members of Middleside as retaliation for earlier gang crimes against West Myrtle. Herrera told his girlfriend that his fellow gang members "were after" Middleside. He knew about the September 1995 killings and indicated at trial that he intended to "back up" his gang brothers when he got into the Mustang. Once in the car, Herrera armed himself with a gun and rode "shotgun" with his gang buddy, casing the area before actually firing. The Mustang then made two passes in front of the apartment where a number of Middleside members had gathered. During each pass, an overabundance of shots were fired. These facts amply support the conclusion that Herrera and the Mustang driver worked as a team to retaliate for the latest drive-by in the ongoing war between West Myrtle and Middleside. The verdict for the conspiracy count is affirmed.

## III

### *Instructions on Conspiracy to Commit Second Degree Murder*

■ Herrera argues the court erred by failing to instruct the jury on conspiracy to commit *second* degree murder and raises ineffective assistance of counsel to negate the doctrine of invited error resulting from his counsel's failure to request such instruction. After the close of briefing in this case, our highest court decided *People v. Cortez* (1998) 18 Cal.4th 1223 [77 Cal.Rptr.2d 733, 960 P.2d 537], and concluded that conspiracy to commit murder is necessarily conspiracy to commit premeditated murder, as any murder planned in advance is premeditated and deliberate. (*Id.* at p. 1237.)[10] The *Cortez* decision moots Herrera's arguments regarding the lack of instructions on conspiracy to commit second degree murder. Consequently, counsel's failure to request such instruction could not be incompetent representation.

## IV

### *Sentencing Issues*

### A. *The Gang Enhancement*

■ Herrera contends that our reasoning in *People v. Ortiz* (1997) 57 Cal.App.4th 480 [67 Cal.Rptr.2d 126] requires that the additional eight-month term for the gang enhancement under section 186.22, subdivision (b)(1) imposed for the second count of attempted premeditated murder be stricken. As section 186.22, subdivision (b) specifically excludes someone "punish[ed] by imprisonment in the state prison for life" (§ 186.22, subd. (b)(4)), he is correct. (*Ortiz, supra,* at p. 486.) Consequently, we order the additional eight-month term under subdivision (b)(1) to be stricken, but order the abstract of judgment be modified to reflect that he cannot be considered for parole for a minimum of fifteen years under section 186.22, subdivision (b)(4).

### B. *Section 654*

■ Herrera contends section 654 (see fn. 1, *ante*) mandates that the sentences on counts 4 through 11 be stayed. The Attorney General concedes

---

[10]At our invitation, the parties provided supplemental briefing on the effect of the *Cortez* opinion.

the issue as to the sentences on counts 4 through 9. Those counts charged him with various firearm violations (counts 4 and 5), discharging a firearm at an inhabited dwelling (count 6), and shooting at unoccupied vehicles (counts 7, 8 and 9). However, counts 10 (receiving stolen property), and 11 (street terrorism) are crimes divisible from the murder counts and thus, not subject to section 654.

■ Since *Neal* v. *State of California* (1960) 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], the test under section 654 has been: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (55 Cal.2d at p. 19.) In *People* v. *Latimer* (1993) 5 Cal.4th 1203 [23 Cal.Rptr.2d 144, 858 P.2d 611], our Supreme Court reaffirmed the *Neal* approach and noted several cases in which the "intent and objective" test had been applied to sustain multiple sentences. (See *id.* at p. 1209.) The *Latimer* court also clarified that section 654 applies to sentencing both for crimes flowing from a single act and for crimes resulting from an indivisible course of conduct which violates more than one statute. (5 Cal.4th at p. 1208; accord, *People* v. *Saffle* (1992) 4 Cal.App.4th 434, 438 [5 Cal.Rptr.2d 648].)

The question of whether the defendant held multiple criminal objectives is one of fact for the trial court, and, if supported by any substantial evidence, its finding will be upheld on appeal. (*People* v. *Braz* (1997) 57 Cal.App.4th 1, 10 [66 Cal.Rptr.2d 553]; *People* v. *Osband* (1996) 13 Cal.4th 622, 730-731 [55 Cal.Rptr.2d 26, 919 P.2d 640].) ■ Here, Herrera's conviction for possessing stolen property is plainly divisible from the attempted murders as it falls within an entirely separate category of crimes, those against property, as distinct from crimes against the person. (E.g., *People* v. *Booth* (1988) 201 Cal.App.3d 1499, 1505 [248 Cal.Rptr. 64] [intent for rape is distinct from intent for the theft that occurred at the same time].)

Herrera's conviction for street terrorism is likewise divisible from the attempted murders. Looking to Herrera's intent and objective with respect to each crime (see *People* v. *Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32]), we conclude that the sentence should stand. "[M]ultiple punishment . . . may be imposed where the defendant commits two crimes in pursuit of two independent, even if simultaneous, objectives. [Citations.]" (*People* v. *Douglas* (1995) 39 Cal.App.4th 1385, 1393-1394 [46 Cal.Rptr.2d 534].)

The characteristics of attempted murder and street terrorism are distinguishable, even though aspects of one may be similar to those of the other.

In the attempted murders, Herrera's objective was simply a desire to kill. For these convictions, the identities (or gang affiliations) of his intended victims were irrelevant. The fact he repeatedly shot a gun on two separate occasions—the interval between the two being brief but distinct—striking cars, occupied apartments and bystanders, is sufficient to establish the specific intent to kill required for both counts of attempted murder. (See CALJIC No. 8.66 (6th ed. 1996) [to prove attempted murder two elements must be met: (1) a direct but ineffectual act done towards killing another human being; and (2) the specific intent to unlawfully kill another human being]; *People* v. *Chinchilla* (1997) 52 Cal.App.4th 683, 688-690 [60 Cal.Rptr.2d 761] [evidence that defendant fired one shot at two officers, one of whom was crouched in front of the other, is sufficient to support two convictions of attempted murder where both officers were visible to the defendant].)

In contrast, section 186.22, subdivision (a), encompasses a more complex intent and objective. It is part of the Street Terrorism Enforcement and Prevention Act which was enacted by emergency legislation in 1988. (Stats. 1988, ch. 1242, § 1, pp. 4127-4130; Stats. 1988, ch. 1256, § 1, pp. 4178-4185.) The Legislature passed these criminal penalties and strong economic sanctions as a response to the increasing violence of street gang members throughout the state. Previously, there was no existing law that made the punishment for crimes by a gang member separate and distinct from that of the underlying crimes. (*In re Alberto R.* (1991) 235 Cal.App.3d 1309, 1318 [1 Cal.Rptr.2d 348].)

Section 186.22, subdivision (a) punishes active gang participation where the defendant promotes or assists in felonious conduct by the gang.[11] It is a substantive offense whose gravamen is the *participation in the gang itself.*[12] Hence, under section 186.22, subdivision (a) the defendant must necessarily have the intent and objective to actively participate in a criminal street gang. However, he does not need to have the intent to personally commit the particular felony (e.g., murder, robbery or assault) because the focus of the street terrorism statute is upon the defendant's objective to promote, further or assist the gang in its felonious conduct, irrespective of who actually commits the offense. For example, this subdivision would allow convictions against both the person who pulls the trigger in a drive-by murder *and* the

---

[11]Section 186.22, subdivision (a), provides in relevant part: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years."

[12]In contrast, subdivision (b) of section 186.22 is an enhancement, and creates additional punishment for anyone who commits a felony for the benefit of, at the direction of, or in association with a street gang. (See *ante*, fn. 7.)

gang member who later conceals the weapon, even though the latter member never had the specific intent to kill. Hence, section 186.22, subdivision (a) requires a separate intent and objective from the underlying felony committed on behalf of the gang. The perpetrator of the underlying crime may thus possess "two independent, even if simultaneous, objectives[,]" thereby precluding application of section 654. (*People v. Douglas, supra,* 39 Cal.App.4th at pp. 1393-1394.)[13]

Herrera's active participation in West Myrtle's "payback" against Middleside falls squarely within the provisions of section 186.22, subdivision (a), street terrorism. It requires the defendant to actively participate in a criminal street gang, have knowledge that its members engage in criminal activity, and have the intent and objective to further the gang's felonious conduct. (§ 186.22, subd. (a).) Independent of that, Herrera had the simultaneous although separate objective to actively participate in and promote his gang when he attempted to murder Middleside gang members. Herrera's membership in West Myrtle was well established at trial, including expert testimony regarding what such a membership entailed. Herrera testified he got into the Mustang to "back up" or support the gang. He had told his girlfriend that his gang was going to retaliate against Middleside. The gang experts explained that gang warfare uniformly involved guns. The evidence supports the finding that Herrera intended to aid his gang in felonious conduct, irrespective of his independent objective to murder.

Finally, if section 654 were held applicable here, it would render section 186.22, subdivision (a) a nullity whenever a gang member was convicted of the substantive crime committed in furtherance of the gang. "[T]he purpose of section 654 'is to insure that a defendant's punishment will be commensurate with his culpability.' [Citation.]" (*People v. Latimer, supra,* 5 Cal.4th at p. 1211.) We do not believe the Legislature intended to exempt the most culpable parties from the punishment under the street terrorism statutes.[14]

## DISPOSITION

The judgment is ordered modified to strike the eight-month enhancement as to count 3, to note that he cannot be eligible for parole for a minimum

---

[13]Reliance on *People v. Douglas, supra,* 39 Cal.App.4th 1385 as authority that section 654 bars sentencing on both the street terrorism *and* the enhancement under section 186.22, subdivision (b) is misplaced. *Douglas* barred imposition of sentence for two separate kidnapping *enhancements* when they were connected to charges of rape and robbery arising from a single kidnapping incident.

[14]We note that in 1993 the Legislature amended first degree murder to include those deaths which resulted from drive-by shootings such as in this case. (§ 189, as amended by Stats. 1993, ch. 611, § 4.5.)

period of fifteen years pursuant to section 186.22, subdivision (b)(4), and to stay execution of the sentences on counts 4 through 9 pursuant to section 654. (Cf. § 1260.) As modified, the judgment is affirmed.

Sonenshine, J., and Wallin, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied June 23, 1999.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.