186 Cal.App.4th 773 (2010)
THE PEOPLE, Plaintiff and Respondent,
v.
TOMMY ANGEL MESA, Defendant and Appellant.
No. D056280.
Court of Appeals of California, Fourth District, Division One.
July 13, 2010.
*775 Richard de la Sota, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting and Meredith A. Strong, Deputy Attorneys General, for Plaintiff and Respondent.[1]

*776 OPINION
BENKE, Acting P. J.
In separate incidents, Tommy Angel Mesa, a gang member, shot and severely wounded two complete strangers. He used the same gun in both incidents, and later was found in possession of the gun and several rounds of ammunition. Mesa was convicted of two counts of assault with a firearm, three counts of being a felon in possession of a firearm, one count of being a felon in possession of ammunition, and two counts of actively participating in a criminal street gang.
With respect to the assault convictions, the jury found true great bodily injury and personal firearm allegations. With respect to one of the assault convictions and one of the firearm possession counts, the jury found gang participation allegations true.
Mesa does not challenge his convictions on the substantive counts or the sufficiency of the evidence supporting the enhancements. Nonetheless, Mesa raises a number of sentencing issues. First, he contends, and the Attorney General agrees, that with respect to one of the assault convictions, the trial court erred in imposing the gang enhancement. As Mesa points out, Penal Code[2] section 1170.1, subdivsions (f) and (g), prevented the trial court from imposing the gang enhancement along with either the firearm enhancement or the great bodily injury enhancement.
Secondly, he contends the trial court erred in imposing consecutive sentences on the three firearm possession convictions. He argues the record shows he had continuous possession of the firearm and that, in light of that continuous possession, section 654 required that imposition of sentencing be stayed on two of the firearm possession counts.
We agree. A felon's continuous possession of a single firearm does not permit multiple punishments for violation of the statute that prohibits felons from possessing a firearm.
Mesa also argues section 654 prevents separate punishments for assault and for participation in a criminal street gang. We disagree with this contention. The criminal street gang statute punishes conduct and intentions that are separate from the conduct and intentions that give rise to culpability for assault with a firearm.
Finally, Mesa argues he should not have been punished for both possessing a firearm and possessing ammunition. We disagree with this contention as *777 well. Where, as here, a felon has possession of both a firearm and ammunition that is not in the firearm, separate punishments may be imposed.
Accordingly, we reverse Mesa's convictions in part and remand for further proceedings.

FACTUAL BACKGROUND
The record shows Mesa was a member of the Coroneros set of the Corona Varios Locos criminal street gang.
On the evening of April 27, 2007, Ghalen W. was asleep next to his four-year-old son in the apartment in Corona where he lived with his two other sons and their mother. April 27 was prom night and Ghalen's oldest son Jeron was at home that evening with his prom date. Around 10:00 p.m., Jeron woke Ghalen up and asked him to go outside with him and his date so that they could meet his date's mother. Jeron told his father a group of guys were hanging around outside the apartment.
Ghalen went outside his apartment and saw a group of five or six Hispanic males, including Mesa. Ghalen told his son and his date to stay near the apartment while Ghalen went to see if the date's mother had arrived. As Ghalen walked toward the street, Mesa confronted him and said: "Why are you walking tough in my neighborhood, Holmes?" Ghalen believed this statement meant Mesa and the others were members of a gang and he was in their territory. Ghalen told Mesa he was not from the area, hoping that would satisfy Mesa. It did not. Mesa responding by saying: "But you're still walking tough in my neighborhood." Ghalen then explained he was just there for his son's prom; Mesa repeated the statement "You're still walking tough in my neighborhood." As Mesa continued walking towards Ghalen, Ghalen remembered one of the doors of his car, which was in front of him, was unlocked. Mesa pulled out a gun, pointed it at Ghalen and began shooting as Ghalen dove into his car. Ghalen heard three shots fired and felt severe pain. Mesa looked in the back window of the car and began running. Ghalen had been shot in the side and the bullet traveled through his body and exited on the left side of his torso.
Two days after Ghalen was shot, on April 29, 2007, Alvin Pierre was riding his bike to a shopping center in Corona. As Pierre rode into the parking lot, he heard Mesa say: "What the fuck are you looking at?" Pierre rode past Mesa, got off his bike near a store and tried to ask Mesa what he had said. Before Pierre could complete a sentence, Mesa pulled out a gun and shot Pierre in the groin. The bullet entered Pierre's left leg, traveled through his scrotum, and exited from his right leg. Pierre's shattered left testicle had to be removed.
*778 Police arrested Mesa in his home on May 30, 2007. Officers found Mesa, wearing a bulletproof vest, hiding in a closet. When Mesa was found, he was wearing an empty gun holster and had a .45-caliber magazine in his front pocket with 10 rounds of .45-caliber ammunition in it. The police also found a handgun in the closet; a ballistics expert testified shell casings found near the scene of the Ghalen and Pierre shootings had been fired from the handgun. Police also found a duffelbag in the closet, and in the duffelbag they found a .22-caliber rifle loaded with seven rounds of ammunition and 46 rounds of additional ammunition.

TRIAL COURT PROCEEDINGS
With respect to the Ghalen shooting, Mesa was charged with attempted murder, assault with a firearm, being a felon in possession of a firearm, and being a participant in a criminal street gang. (Counts 1-4.) With respect to the Pierre shooting, Mesa was charged with similar counts of attempted murder, assault with a firearm, being a felon in possession of a firearm, and being a participant in a criminal street gang. (Counts 5-8.) In addition, with respect to the circumstances which existed at the time of his arrest on May 30, 2007, Mesa was charged with an additional count of being a felon in possession of a firearm (count 9) and one count of being a felon in possession of ammunition (count 10).
All three firearm possession counts identified a .45-caliber handgun as the firearm Mesa unlawfully possessed.
The jury could not reach verdicts on either the Ghalen or Pierre attempted murder counts, and the trial court dismissed those counts pursuant to section 1385.
As to both the Ghalen and Pierre shootings, the jury found Mesa guilty of assault with a firearm, being a felon in possession of a firearm, and participating in a criminal street gang. With respect to his arrest, the jury found Mesa guilty on the third count of firearm possession and the ammunition possession count.
In addition to the substantive crimes for which he was found guilty, the jury found true a number of special circumstance allegations. With respect to both assault convictions, the jury found Mesa had committed great bodily harm and had personally used a firearm. With respect to the Ghalen shooting and Mesa's possession of a firearm during the shooting, the jury found true gang enhancement allegations. Mesa admitted the truth of two prison sentences.
*779 The trial court imposed a total sentence of 39 years eight months. The total term imposed included 23 years in consecutive sentences on the enhancements the jury found true with respect to the assault on Ghalen: three years for the great bodily injury enhancement, 10 years for the personal use of a firearm enhancement, and 10 years for the gang enhancement. Mesa was eligible for a full-strength 10-year gang enhancement, rather than the otherwise applicable two-, three- or four-year enhancement, "only because he `use[d] a firearm which use [was] charged and proved as provided in ... Section 12022.5.' [Citation.]" (People v. Rodriguez (2009) 47 Cal.4th 501, 509 [98 Cal.Rptr.3d 108, 213 P.3d 647].)
With respect to the Ghalen felon in possession of a firearm count, the trial court imposed a consecutive sentence of eight months plus 16 months on the gang enhancement. The trial court imposed consecutive eight-month sentences on the remaining two firearm counts and an eight-month consecutive sentence on the ammunition possession count. On the two gang participation counts, the court imposed consecutive eight-month sentences.

DISCUSSION

I
In his first argument on appeal, Mesa contends and, as we indicated at the outset, the Attorney General agrees, the trial court erred in imposing sentence on all three enhancements found true with respect to the assault on Ghalen.
(1) In People v. Rodriguez, supra, 47 Cal.4th at page 509, the court held that, where, as here, the 10-year enhancement for gang participation is based on a defendant's use of a firearm in commission of the underlying offense, the trial court may not also impose a separate enhancement for the personal use of a firearm under section 12022.5, subdivision (a). The court held that, under those circumstances, imposition of both enhancements is barred by section 1170.1, subdivision (f), which provides in pertinent part: "When two or more enhancements may be imposed for being armed with or using a dangerous or deadly weapon or a firearm in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense." (See People v. Rodriguez, supra, 47 Cal.4th at p. 509.)
As the court in People v. Rodriguez determined, given these circumstances, the proper remedy is "not to strike the punishment under section 12022.5 but to reverse the trial court's judgment and remand the matter for resentencing. [Citation.] Remand will give the trial court an opportunity to restructure its *780 sentencing choices in light of our conclusion that the sentence imposed here violated section 1170.1's subdivision (f)." (People v. Rodriguez, supra, 47 Cal.4th at p. 509.)[3]

II
Next, Mesa contends the trial court erred in imposing consecutive sentences on all three felon in possession of a firearm convictions. We agree with Mesa.
(2) Section 654, subdivision (a), provides in part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "Section 654 precludes multiple punishment for a single act or for a course of conduct comprising indivisible acts. `Whether a course of criminal conduct is divisible ... depends on the intent and objective of the actor.' [Citations.] `[I]f all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.' [Citation.]" (People v. Evers (1992) 10 Cal.App.4th 588, 602 [12 Cal.Rptr.2d 637].)
(3) In People v. Spirlin (2000) 81 Cal.App.4th 119, 130 [97 Cal.Rptr.2d 1], the court found that where, as here, the evidence showed the defendant had the same handgun on three separate occasions, but there was no evidence which suggested he ever lost possession of the weapon, the defendant could only be punished once for violation of section 12021. In People v. Spirlin the defendant used a gun in two separate robberies committed within one month. Six days after the last robbery, the defendant was arrested and found with the same gun. His wife told police he had had the gun for a couple months before his arrest. In determining only one punishment could be imposed, the court stated: "The key inquiry here is whether defendant's objective and intent in possessing the handgun on all three occasions were the same, thus making the crime one indivisible transaction subject only to one punishment under section 654. [Citation.] Section 12021 does not require any specific criminal intent; general intent to commit the proscribed act is sufficient. [Citation.] The act proscribed by section 12021 is possession of a firearm by a convicted felon. [Citation.] Possession may be either actual or constructive as long [as] it is intentional. [Citation.] `The proof need not conform to the exact date laid in the information, it being sufficient to prove the commission of the offense at *781 any time prior to the filing of the information within the statutory periodthe commission of the act here charged is not the kind that does not constitute a crime unless committed on a specific date; time is not of the essence or a material ingredient of the offense . . . .' [Citation.]" (People v. Spirlin, supra, 81 Cal.App.4th at p. 130.)
The court concluded the defendant completed the offense once he took possession of the gun, and in light of the fact there was no suggestion in the record he ever lost possession, he could not be said to have completed separate violations of section 12021 when he committed the robberies. While the court found that what the defendant did with the gun "i.e., commit the robberies, were `separate and distinct transaction[s] undertaken with an additional intent which necessarily is something more than the mere intent to possess the proscribed weapon' [citation], the same cannot be said of his continuous possession of the weapon. In other words, defendant's intent to possess the weapon as a felon did not change each time he committed a robbery or when he was arrested and the gun confiscated." (People v. Spirlin, supra, 81 Cal.App.4th at pp. 130-131.)
We agree with the holding and reasoning in People v. Spirlin. The conduct proscribed by section 12021, i.e., the actual or constructive possession of a firearm by a felon, is by its nature continuous. As the court in People v. Spirlin suggested, that being the case, where possession of a firearm has not been interrupted, there is no acceptable rationale by which such continuous possession can be divided so that separate intention or objectives can be identified. Thus, we decline the Attorney General's suggestion that we depart from People v. Spirlin.
Here, as in People v. Spirlin, there is no evidence Mesa ever lost actual or constructive possession of the .45-caliber handgun which was the subject of his three convictions for violation of section 12021. Thus, under section 654 he may only be punished for one of those convictions.

III
Next, Mesa contends that under section 654 he could not be punished for both assaulting a victim with a firearm and participation in a criminal street gang. Accordingly, he contends the trial court erred in imposing consecutive eight-month sentences for the two criminal street gang convictions. We disagree with this contention.

A. The California Street Terrorism and Prevention Act

The California Street Terrorism Enforcement and Prevention Act (the Street Gang Act), section 186.20 et seq. was enacted in 1988. (Stats. 1988, *782 ch. 1242, § 1, p. 4127.) In adopting the Street Gang Act, the Legislature made a number of findings, including the following: "[T]he State of California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods. These activities, both individually and collectively, present a clear and present danger to public order and safety and are not constitutionally protected. The Legislature finds that there are nearly 600 criminal street gangs operating in California, and that the number of gang-related murders is increasing. The Legislature also finds that in Los Angeles County alone there were 328 gang-related murders in 1986, and that gang homicides in 1987 have increased 80 percent over 1986. It is the intent of the Legislature in enacting this chapter to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs, which together, are the chief source of terror created by street gangs. The Legislature further finds that an effective means of punishing and deterring the criminal activities of street gangs is through forfeiture of the profits, proceeds, and instrumentalities acquired, accumulated, or used by street gangs." (§ 186.21, italics added.)
(4) Given these findings, the Legislature enacted section 186.22, subdivision (a), which makes it a crime to participate in street gang activity. Section 186.22, subdivision (a), states: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years."
(5) We think it is worthwhile at the outset to recognize that in both its findings and in describing prohibited conduct, the Legislature was plainly focused on patterns of gang activity and the consequent terror those patterns of activity engender. Thus, it is not surprising that the courts which have considered the issue have consistently held that section 186.22, subdivision (a), may be applied to both the aiders and abettors of gang crimes and where the evidence supports the gang connection to the crime, the direct perpetrators of crimes. (See People v. Sanchez (2009) 179 Cal.App.4th 1297, 1308 [101 Cal.Rptr.3d 639]; People v. Salcido (2007) 149 Cal.App.4th 356, 368 [56 Cal.Rptr.3d 912]; People v. Ngoun (2001) 88 Cal.App.4th 432, 436 [105 Cal.Rptr.2d 837].) Where a direct perpetrator has committed a crime as a means of asserting the power of and respect for the gang, the direct perpetrator is just as culpable under section 186.22, subdivision (a), as any aider and abettor. (People v. Salcido, supra, 149 Cal.App.4th at p. 368.)
*783 (6) Here, the shootings Mesa committed were part of a larger pattern of gang activity, and plainly that pattern created the sort of terror which was the focus of the Legislature's efforts in adopting the Street Gang Act. Moreover, the evidence of the manner in which Mesa's crimes were carried out, including in particular Mesa's statements to the victims, shows they were committed as a means of asserting the gang's power and commanding respect. As we explain more fully below, nothing in section 654 prevented Mesa from being punished for both the grievous harm he did to Ghalen and Pierre and for the separate terror all of his gang activity, including the shootings, engendered in his community.

B. People v. Herrera, People v. Vu, and People v. Sanchez
In People v. Sanchez, supra, 179 Cal.App.4th at pages 1310-1313, the court recently considered a claim similar to the one Mesa makes and in the course of doing so set forth the development in Court of Appeal opinions of a body of law interpreting the requirements of section 654 when, as here, a defendant has been punished for both violating section 186.22, subdivision (a), and a separate criminal statute: "The earliest case dealing with the application of section 654 in the context of a gang participation charge is People v. Herrera (1999) 70 Cal.App.4th 1456 [83 Cal.Rptr.2d 307] (Fourth Dist., Div. Three).
"In Herrera, two gangs engaged in a series of retaliatory shootings. In the most recent one, shots were fired at a house occupied by members of the defendant's gang. One of them then drove and picked up the defendant, who explained to his girlfriend that `his "home boys were after the guys." [Citation.] The defendant and his cohort then drove by a house identified with the rival gang,' made a U-turn, and drove by again, firing shots both times. On the first pass, two people were hit. [Citation.]
"As a result, the defendant was convicted of (among other things) one count of gang participation and two counts of attempted murder. [Citation.] The court held that section 654 did not require the trial court to stay the gang participation term. It explained: `"[M]ultiple punishment . . . may be imposed where the defendant commits two crimes in pursuit of two independent, even if simultaneous, objectives. [Citations.]" [Citation.]
"`The characteristics of attempted murder and street terrorism are distinguishable.. . . In the attempted murders, Herrera's objective was simply a desire to kill. For these convictions, the identities (or gang affiliations) of his intended victims were irrelevant.' [Citation.] At this point, the court noted that there was `sufficient [evidence] to establish the specific intent to kill required for both counts of attempted murder. [Citations.]' [Citation.]
*784 "It continued: `[U]nder [Penal Code] section 186.22, subdivision (a) the defendant must necessarily have the intent and objective to actively participate in a criminal street gang. However, he does not need to have the intent to personally commit the particular felony (e.g., murder, robbery or assault) because the focus of the street terrorism statute is upon the defendant's objective to promote, further or assist the gang in its felonious conduct, irrespective of who actually commits the offense. For example, this subdivision would allow convictions against both the person who pulls the trigger in a drive-by murder and the gang member who later conceals the weapon, even though the latter member never had the specific intent to kill. Hence, section 186.22, subdivision (a) requires a separate intent and objective from the underlying felony committed on behalf of the gang. The perpetrator of the underlying crime may thus possess "two independent, even if simultaneous, objectives[,]" thereby precluding application of section 654. [Citation.]' [Citation.] At this point, the court found sufficient evidence that the defendant `intended to aid his gang in felonious conduct, irrespective of his independent objective to murder.' [Citation.]
"Finally, the court added: `[I]f section 654 were held applicable here, it would render [Penal Code] section 186.22, subdivision (a) a nullity whenever a gang member was convicted of the substantive crime committed in furtherance of the gang. "[T]he purpose of section 654 `is to insure that a defendant's punishment will be commensurate with his culpability.' [Citation.]" [Citation.] We do not believe the Legislature intended to exempt the most culpable parties from the punishment under the street terrorism statutes.' [Citation.]" (People v. Sanchez, supra, 179 Cal.App.4th at pp. 1310-1311.)
Following its discussion of People v. Herrera, the court in People v. Sanchez noted: "Herrera was followed by the Fourth District, Division Three in People v. Ferraez (2003) 112 Cal.App.4th 925 [5 Cal.Rptr.3d 640] and by the Sixth District in In re Jose P. (2003) 106 Cal.App.4th 458 [130 Cal.Rptr.2d 810]. They both indicated that multiple punishment for gang participation and for the underlying offense is permissible as long as the underlying offense requires a different specific intent. (Ferraez, at p. 935 [possession of drugs with the intent to sell]; Jose P., at pp. 470-471 [robbery].) Thus, they added little to Herrera's analysis.
"Thereafter, however, the Fourth District, Division Three decided People v. Vu (2006) 143 Cal.App.4th 1009 [49 Cal.Rptr.3d 765]. The author of Herrera was a concurring panel member in Vu. There, the defendant and other members of his gang conspired to kill the victim under the mistaken impression that he was a member of a rival gang. [Citation.] The defendant was convicted of (among other things) gang participation and conspiracy to commit murder. [Citation.]
*785 "The court held that section 654 required the trial court to stay the gang participation term. [Citation.] It stated: `Herrera is distinguishable because the defendant was charged with a course of criminal conduct involving two gang-related, drive-by shootings in which two people were injured. [Citation.] . . .
"`Under Neal, Vu committed different acts, violating more than one statute, but the acts of conspiracy and street terrorism constituted a criminal course of conduct with a single intent and objective. That single criminal intent or objective was to avenge [a fellow gang member]'s killing by conspiring to commit murder. Although that intent or objective could be parsed further into intent to promote the gang and intent to kill, those intents were not independent. Each intent was dependent on, and incident to, the other.' [Citation.]" (People v. Sanchez, supra, 179 Cal.App.4th at p. 1312, fn. omitted.)
In People v. Sanchez the court rejected the reasoning and holding in People v. Herrera and accepted the holding, but not the reasoning, of the court in People v. Vu. In People v. Sanchez the defendant was convicted of both committing a robbery with a confederate and participating in a street gang in violation of section 186.22, subdivision (a). In finding that he could not be punished for both crimes, the court stated: "Here, the underlying robberies were the act that transformed mere gang membershipwhich, by itself, is not a crimeinto the crime of gang participation. Accordingly, it makes no sense to say that defendant had a different intent and objective in committing the crime of gang participation than he did in committing the robberies. Gang participation merely requires that the defendant `willfully promote[d], further[ed], or assist[ed] in any felonious criminal conduct by members of that gang . . . .' [Citation.] It does not require that the defendant participated in the underlying felony with the intent to benefit the gang. [Citations.]
"In our view, the crucial point is that, here, as in Herrera and Vu, defendant stands convicted of both (1) a crime that requires, as one of its elements, the intentional commission of an underlying offense, and (2) the underlying offense itself. Thus, the most analogous line of cases involves convictions for both felony murder and the underlying felony. It has long been held that section 654 bars multiple punishment under these circumstances. [Citations.] The logic is that the underlying felony `is a statutorily defined element of the crime of felony murder' [citation], and thus the underlying felony is `the same act which made the killing first degree murder.' [Citation.]
"Most significantly for our purposes, multiple punishment for both felony murder and the underlying felony is barred even when there is evidence that *786 the killing was intentional and premeditated [citation]; thus, the trial court could have found that the defendant had the intent and objective of killing in connection with the murder, as well as the separate intent and objective of taking property in connection with an underlying robbery." (People v. Sanchez, supra, 179 Cal.App.4th at p. 1315.)

C. Our Resolution

With due respect to our colleagues who decided People v. Sanchez, we believe the court in People v. Herrera has the better of this dispute.
First, from a practical perspective, it seems somewhat incongruous to us to hold, as the court in People v. Sanchez did, that although the direct perpetrator of a gang crime may be found guilty of violating section 186.22, subdivision (a), he may not be punished for that crime because of the bar imposed by section 654. (See People v. Sanchez, supra, 179 Cal.App.4th at pp. 1308, 1315-1316.) We of course agree with the court in People v. Sanchez, as well as the courts in People v. Salcido, supra, 149 Cal.App.4th 356 and People v. Ngoun, supra, 88 Cal.App.4th 432, that a direct perpetrator is just as culpable as an aider and abettor for violation of section 186.22, subdivision (a). However, rather than ignoring the Legislature's obvious intention that direct perpetrators be punished as well as aiders and abettors, we would draw from that intention an inference that in enacting section 186.22, subdivision (a), the Legislature meant to recognize an independent crimegang participationrather than a species of dependent criminal culpability.
Secondly, we are unpersuaded by the court's reliance in People v. Sanchez on the rule in felony-murder cases. In a felony-murder case where there is only one victim, the element of malice is found by way of the fact the homicide occurred during the commission of a dangerous felony. Where the underlying felony is robbery, there is but one act, "the act of robbery . . . which made the homicide first degree murder." (People v. Mulqueen (1970) 9 Cal.App.3d 532, 547 [88 Cal.Rptr. 235].) Multiple punishment is not permissible under those circumstances because there was only one act and more importantly only one criminal objective. (Ibid.)
(7) Mesa's culpability under the Street Gang Act is quite different. Violation of section 186.22, subdivision (a), does not depend solely on the commission of the underlying offense. Rather, it depends on both the commission of the underlying offense and the separate act of actively participating in a gang. Thus, unlike felony murder, liability under section 186.22, subdivision (a), necessarily depends on conduct distinct from the conduct which gives rise to liability for any underlying offense.
*787 Significantly, liability under the statute and liability for an underlying offense will in most instances involve distinct criminal objectives and quite distinct impacts. Here, the record supports the inference the shootings were intended to both harm the individual victims and to demonstrate to the entire community the power of Mesa's gang. The distinct nature of these objectives and consequences can be seen vividly in the behavior of Ghalen's son Jeron.
(8) Jeron plainly knew the danger Mesa's gang posed to him and to his prom date before any shots were fired. The pattern of Mesa's gang activity clearly had already had its impact. The fear Mesa and his fellow gang members created in the minds of that young man and his date on the evening of their prom was the very focus of the Legislature in enacting the Street Gang Act. (See § 186.21.) Importantly, Mesa would have and could have reinforced those fears by committing any number of different and lesser offenses against Jeron's father or his property and still been liable under section 186.22, subdivision (a). Mesa chose to assault Ghalen with a firearm. The shots Mesa fired had a direct and devastating impact on Ghalen; however, in light of the express purposes of the Street Crime Act, we cannot turn a blind eye to the separate and unique impact Mesa's shots no doubt had on Jeron, his date and anyone else in the vicinity who witnessed the shooting or later heard about it. They plainly had to have been terrorized by the shooting and their fear of the gang had to have been amplified. The same is true with respect to the shooting of Pierre. Pierre not only suffered grave harm, but any of the shopkeepers, their employees or members of the public who witnessed the shooting were no doubt terrorized by the act. It is that terror which the Legislature expressly addressed in section 186.21. In this sense, separate punishment under section 186.22 is far closer to the well-recognized exception to section 654 which permits multiple punishment when a defendant's conduct has injured more than one victim than it is to the felony-murder rule, relied upon by the court in People v. Sanchez. (See, e.g., People v. Williams (1992) 9 Cal.App.4th 1465, 1473 [12 Cal.Rptr.2d 243].)
In sum, we see nothing in section 186.22, subdivision (a), or section 654 which suggests Mesa should not be punished both for the broader crimes of instilling terror in a community by way of the multiple acts of his gang and the distinct and more grievous crimes of wounding Ghalen and Pierre. Thus, we find no violation of section 654 in punishing Mesa for both assault with a firearm and violation of section 186.22, subdivision (a).

IV
Finally, Mesa argues that he could not be punished for both possessing a firearm and possessing ammunition. We find no error.
*788 Arguably, Mesa could not be punished for both possessing a firearm and possessing the ammunition in the firearm. (See People v. Lopez (2004) 119 Cal.App.4th 132, 137 [13 Cal.Rptr.3d 921].) Here, however, the record shows that Mesa was in possession of both a weapon and a fair amount of ammunition which was not in the weapon. Under these circumstances, his possession of a weapon and ammunition were distinct enough to permit separate punishment.

DISPOSITION
The judgments of conviction are affirmed in part and reversed in part and remanded for further proceedings consistent with the views we have expressed.
Nares, J., and Aaron, J., concurred.
NOTES
[1] Cristin Morneau, a certified law student, presented oral argument.
[2] All further statutory references are to the Penal Code unless otherwise specified.
[3] As Mesa points out, section 1170.1, subdivision (g), provides a similar limitation when, as here, a great bodily injury enhancement has been found true.