Filed 10/26/15  P. v. Gregg CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THE PEOPLE, | C077234 |
| Plaintiff and Respondent, | (Super. Ct. No. 14-93) |
| v. | |
| TRAVIS JAMES GREGG, | |
| Defendant and Appellant. | |

A jury found defendant Travis James Gregg guilty of resisting a peace officer with force or violence (Pen. Code, § 69; count 1)[1] and exhibiting a deadly weapon with intent to resist a peace officer (§ 417.8; count 2).  Defendant was sentenced to an eight year four month aggregate term.  On appeal, defendant contends that sentence is unauthorized because section 654 bars punishment for two convictions arising from the same act or

_____

[1]  All undesignated section references are to the Penal Code.

1

course of conduct. We agree and therefore modify the judgment by staying the sentence on count 1.

## BACKGROUND

An hour before midnight, Yreka Police Department and California Highway Patrol officers arrived at defendant's parents' home, to arrest defendant for cutting off his ankle monitor. Once the house was surrounded, police dispatch called the home to tell defendant the home was surrounded; defendant responded that he was not going to give up. Defendant then appeared in the kitchen window and yelled that he was not going to be taken alive. He pointed to his temple saying: "Shoot me, shoot me right here." Defendant then ducked out of view.

Several minutes later, he reappeared at the front door, from behind a closed metal security screen door. He continued to make threats while officers tried to talk with him. After several minutes, defendant opened the screen door, revealing what appeared to be a steak knife in his hand. Holding the knife, he continued to threaten that he would not be taken alive, that he would take one of the officers out, and make the officers shoot him. At one point, defendant stuck his body further out the door screaming, "Just fucking shoot me." As he did, an officer attempted to shoot him with a Taser but missed. Defendant went back inside, shutting the security screen door.

The officers observed a scuffle in the kitchen, and shortly after defendant's father walked out the front door. An officer directed the father to get defendant's mother and grandfather out of the house. The father reentered the house.

Defendant came to the door a second time and opened the screen door -- this time holding a butter knife. Defendant's mother also came to the door and tried unsuccessfully to push defendant outside. Shortly after, the butter knife was tossed outside, and defendant went back inside, shutting the door and security screen. Officers heard screaming and arguing from inside the house. When defendant's uncle came outside, an officer ordered him to leave the security screen door fully open.

2

Defendant came to the door a third time, this time holding only a pack of cigarettes. Seeing no weapons, the officers rushed him. As they forced the door open, an officer fired his Taser through the doorway; defendant screamed and fell. The officers got on top of defendant, and one deployed a Taser to the base of defendant's neck, through his jacket. The officers struggled to cuff defendant as he would not provide his hands and was lifting up on his side. Defendant was "Tased" again, screamed, "I'm done, I'm done," and was taken into custody.

From the time police arrived, until defendant was arrested, 1 hour 12 minutes had elapsed. Defendant was convicted of resisting a peace officer with force or violence (§ 69) and exhibiting a deadly weapon with intent to resist a peace officer (§ 417.8).

## DISCUSSION

Defendant contends the trial court erred in failing to sua sponte[2] stay the sentence on count 1, pursuant to section 654. He reasons that count 1 (resisting a peace officer with force or violence) and count 2 (exhibiting a deadly weapon to a police officer with intent to resist) were part of a continuous course of conduct committed with a singular intent and objective: to resist arrest. We agree and direct the trial court to stay the sentence on count 1.

Though a person may be convicted of more than one crime for the same act, section 654 proscribes multiple punishments for the same act. (§§ 654, 954; *People v. Correa* (2012) 54 Cal.4th 331, 337 (*Correa*).) An " 'act' " can include a " ' "course of conduct." ' " (*Correa,* at p. 335.)

---

[2] Lack of an objection does not constitute a forfeit of section 654 application. Because a trial court acts in excess of its jurisdiction and imposes an unauthorized sentence when it erroneously fails to stay execution of a sentence subject to the multiple punishment ban, a claim of error on that ground is not forfeitable. (*People v. Le* (2006) 136 Cal.App.4th 925, 931.)

3

When a course of conduct causes multiple offenses -- each capable of being independently committed -- section 654 application turns on whether each conviction was based on a separate, divisible transaction. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19.) Whether a course of conduct is divisible turns on the defendant's intent and objective. (*Ibid*.) " 'If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*Correa, supra*, 54 Cal.4th at pp. 335-336.) But, if a defendant entertained multiple objectives --independent of and not merely incidental to each other -- multiple punishment is permitted even if the violations shared common acts or were parts of an otherwise indivisible course of conduct. (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.)

A trial court's finding that a defendant held multiple criminal objectives will be upheld if supported by substantial evidence. (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1466, disapproved on other grounds in *People v. Mesa* (2012) 54 Cal.4th 191, 199.) Where, as here, the trial court makes no express section 654 findings, we consider whether substantial evidence supports an implied finding of a separate intent and objective. (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.)

Here, the record does not support an implied finding that defendant maintained independent criminal objectives when he resisted a peace officer in count 1 and exhibited a deadly weapon to a police officer to resist arrest in count 2. The People suggest that defendant's course of conduct is divisible into two distinct criminal objectives: his objective for count 1 "was to physically resist arrest whereas . . . [his] objective [for count two] was to keep the officers away by brandishing the knife." We disagree.

Defendant's conduct throughout the standoff supports only one reasonable inferred objective. As the prosecutor articulated to the jury: "[T]here's only one reasonable explanation for what's going on, and that's the defendant is intending to prevent the officers from doing their job arresting him. That's his intention."

4

We similarly reject the People's argument that defendant's actions were separated by sufficient time to reflect. The People rely on *People v. Kwok* (1998) 63 Cal.App.4th 1236 (*Kwok*). But *Kwok* is distinguishable.

*Kwok* held that a defendant could be punished for two separate acts of entering the victim's home, occurring nine days apart. (*Kwok, supra*, 63 Cal.App.4th at p. 1257.) The court explained that to effectuate section 654's purpose of ensuring punishment is commensurate with culpability, a defendant may be punished for a course of conduct directed to a single objective, if the conduct is divisible in time. (*Kwok,* at p. 1253.) Multiple punishment was commensurate with culpability in *Kwok* because each entrance created a distinct risk of a violent confrontation, and the nine days separating the two entrances gave ample time to reflect. (*Id.* at pp. 1256-1257.)

*Kwok* relied on *In re William S.* (1989) 208 Cal.App.3d 313 (*William S.*) (abrogated on other grounds as noted in *People v. Kirvin* (2014) 231 Cal.App.4th 1507), which upheld multiple punishment where a juvenile burglarized a home, left, and returned several hours later. (*William S.*, at pp. 315-316.) The court distinguished the situation from that where a burglar makes a series of brief entries into a dwelling in order to load a getaway vehicle. (*Id.* at p. 317.) The court noted at least an hour had passed at a safe haven offering the juvenile time to reflect (*ibid.*), the second entry was inspired by a desire to steal different property, and the second entry doubled the grave risks of violent confrontation engendered in the initial burglary. (*Id.* at p. 319.) Thus, the two burglaries were not so intertwined in a continuous course of conduct to justify section 654's application. (*William S.,* at p. 319.)

Here, the record does not reflect culpability commensurate with multiple punishment, as seen in *Kwok* and *William S.* Defendant's actions giving rise to the two counts did not effectively double a grave risk. Nor does the record indicate a second act was motivated by a goal beyond the original objective of resisting arrest. (Cf. *Kwok,*

5

*supra*, 63 Cal.App.4th at p. 1257 [noting defendant's objective for the first entrance into the victim's home was much broader than the objective for the subsequent entry].)

We also note that while courts have found opportunity to reflect in periods as short as a minute, those instances involved far greater culpability than seen here. (See *People v. Trotter* (1992) 7 Cal.App.4th 363, 368 [shots fired, a minute apart, at pursuing police became more egregious with each successive shot]; *People v. Louie* (2012) 203 Cal.App.4th 388, 399 [finding 15 minutes afforded sufficient time to reflect and renew intent where the two criminal acts were incident to different objectives]; *People v. Clair* (2011) 197 Cal.App.4th 949, 960-961 [noting that declining to punish defendant for separate acts of e-mailing child pornography, separated by at least 10 minutes, would violate § 654's purpose of ensuring punishment is commensurate with culpability]; *People v. Harrison* (1989) 48 Cal.3d 321, 338 [rejecting defendant's argument that he was less culpable because the victim's efforts to free herself led to the subsequent repeated sexual assaults]; see also *People v. Perez* (1979) 23 Cal.3d 545, 553 [noting a defendant who commits a number of base criminal acts on the victim is substantially more culpable than a defendant who commits one such act].)

We therefore conclude that there is insufficient evidence to support the trial court's implied finding of a separate intent and objective. We accordingly modify the judgment to stay sentence on count 1 pursuant to section 654.

Finally, our review of the record shows the abstract of judgment contains a clerical error. The trial court sentenced defendant to one year four months for count 1 (§ 69) and six years for count 2 (§ 417.8). The abstract of judgment transposes the sentences for the two counts. We therefore order that the abstract of judgment be amended to correct that error.

## DISPOSITION

The judgment is modified to stay punishment for count 1 (§ 69), pursuant to section 654. The trial court is directed to prepare an amended abstract of judgment

correcting the recording error and staying sentence for count 1. The trial court is further directed to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

/s/
Blease, Acting P. J.

We concur:


/s/
Robie, J.


/s/
Butz, J.

7