Filed 4/30/13  P. v. Parra CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ENRIQUE PARRA,<br><br>    Defendant and Appellant. | 2d Crim. No. B237197<br>(Super. Ct. No. KA090753-01)<br>(Los Angeles County) |

Enrique Parra appeals a judgment following conviction of two counts of attempted willful, deliberate, and premeditated murder, with findings that he personally discharged a firearm causing great bodily injury, was released from custody in another case at the time he committed the present offenses, and served two prior prison terms. (Pen. Code, §§ 187, subd. (a), 189, 664, subd. (a), 12022.53, subds. (b)-(d), 12022.1, 667.5, subd. (b).)[1] We conclude that sufficient evidence supports the judgment and affirm.

---

[1] All further statutory references are to the Penal Code unless stated otherwise. References to sections 12022.1 and 12022.53 are to versions in effect prior to repeal effective January 1, 2012.

*FACTS AND PROCEDURAL HISTORY*
*May 25, 2010, Shooting*
*(Count 1)*

In the afternoon of May 25, 2010, Parra, Albert Lopez, and Patrick Hunt socialized in the garage of Lopez's Pomona residence, "drinking a couple of beers, listening to music." Hunt, a childhood friend and neighbor of Lopez, considered Lopez and his mother, Vandie Parke, as his second family. Parra was Parke's longtime boyfriend. The three men were friendly and did not know each other to carry firearms.

That day the men made several trips to the liquor store to purchase beer. During the final trip, Lopez noticed a "little bit of tension." The journey was "quiet and awkward," and Parra drove the vehicle quickly over "speed bumps."

After their return to the Lopez residence, the men resumed drinking beer and listening to music. Lopez sat in a chair facing the garage door and the street; Hunt stood or sat behind Lopez on the right side, and Parra was on Lopez's left side. Parra spoke with Lopez regarding the music and Hunt read a text message on his cellular telephone. As Parra turned to walk into the residence, he suddenly shot Hunt in the neck from a distance of approximately six to eight feet. Lopez heard the gunshot and turned to ask what happened. Hunt replied that Parra shot him.

When Parke heard the gunshot, she hurried to the garage and found the three men staring at each other. She asked, "What the fuck is going on in here?" Hunt responded that Parra shot him. Parra then "took off down the street." Parke summoned police officers and paramedics.

Hunt received emergency medical care at the hospital, including surgery on his neck and esophagus, and remained hospitalized for a week and one-half. The hospital surgeon was unable to remove the bullet from his neck, however. As a consequence of the shooting, Hunt is unable to eat food normally and will require lifelong medical monitoring of his injury.

Over the next eight months, Parra telephoned Parke several times but they did not meet. On February 10, 2011, he telephoned her and asked to meet before he surrendered to police officers. She reluctantly agreed and he drove to her residence that afternoon. Parke and Parra then drove Parke's vehicle to collect her children from school and later to a liquor store. At the liquor store, Parra saw Hunt and his friend Ricky near the store. Parra left the vehicle and he and Hunt looked at each other. Hunt stated, "[Y]ou shot me in my neck." Parra replied, "[W]hat you gonna do about it?" Parra then pulled a firearm and began to chase Hunt and Ricky. Parra fired the weapon five times, striking Hunt twice -- in the right side of his back and in his right forearm. Another bullet passed by Hunt's head before it shattered the liquor store window. Parra then returned to Parke's vehicle and drove away.

During the incident, Parke left the vehicle and ran away. Upon hearing gunshots, she turned and saw Parra holding an object with his arm extended and Hunt running away from him.

Later that day, police officers saw Parke's truck and then found Parra hiding in a backyard. With the assistance of a police canine, officers arrested him.

Hunt was again hospitalized for treatment of two bullet wounds that left permanent scars on his chest and arm.

At trial, Parra's sister testified that Hunt had informed her that he was a member of a criminal street gang. Parra also presented an eyewitness who testified that she saw four young men arguing outside the liquor store and that two of them had guns.

The jury convicted Parra of two counts of attempted willful, deliberate, and premeditated murder and found that he personally discharged a firearm causing great bodily injury. (§§ 187, subd. (a), 189, 664, subd. (a), 12022.53, subds. (b)-(d).) In a separate proceeding, the trial court found that Parra had been released from custody in another case at the time he committed the present offenses, and that he served two prior prison terms. (§§ 12022.1, 667.5, subd. (b).) The court sentenced him to 66 years to life

in prison, imposed a $10,000 restitution fine, a $10,000 parole revocation restitution fine (stayed), an $80 court operations assessment, and a $60 criminal conviction assessment, and awarded him 312 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a)(1); Gov. Code, § 70373.)

Parra appeals and argues that insufficient evidence supports his conviction of two counts of attempted murder, thereby depriving him of due process of law pursuant to the federal and California Constitutions.

*DISCUSSION*

*I.*

Parra contends there is insufficient evidence of the intent to kill element of the attempted murder committed in the Lopez garage. (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653 [attempted murder requires the specific intent to kill].) To support his assertion of an accidental shooting, he relies on evidence that he appeared shocked after he shot Hunt and that he shot him only one time. Parra also points out that no witness saw the shooting, there is no evidence of hostile or angry words accompanying the act, and no evidence of motive.

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Streeter* (2012) 54 Cal.4th 205, 241.) Our review is the same in a prosecution primarily resting upon circumstantial evidence. (*People v. Watkins* (2012) 55 Cal.4th 999, 1020.) We do not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) We must accept logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise. (*Streeter*, at p. 241.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.)

The crime of attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing. (*People v. Smith* (2005) 37 Cal.4th 733, 739.) Intent to kill and express malice are "'one and the same.'" (*Ibid.*) Express malice is established by evidence that the assailant either desired the resulting death or knew to a substantial certainty that death would occur. (*Ibid.*)

The trier of fact may infer the intent to kill or express malice from the defendant's acts and the circumstances of the crime. (*People v. Smith*, *supra*, 37 Cal.4th 733, 741.) Rarely is there direct evidence of a defendant's intent; it must be inferred from his acts and circumstances of the attempt. (*Ibid.*) "[T]he act of purposefully firing a lethal weapon at another human being at close range, without legal excuse, generally gives rise to an inference that the shooter acted with express malice." (*Id.* at p. 742.)

Sufficient evidence and all reasonable inferences therefrom support the finding of intent to kill. Parra fired a firearm at Hunt from a distance of six to eight feet away, striking Hunt in the neck. (*People v. Smith*, *supra*, 37 Cal.4th 733, 741 [purposeful use of a lethal weapon permits an inference of intent to kill].) A gunshot fired from this distance is considered to be at close range. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1082; *People v Brown* (2012) 210 Cal.App.4th 1, 8 [shots fired from five feet away].) The bullet also struck Hunt in a vital area of the body, an area containing major blood vessels and the spinal cord. At the time, Hunt was engaged in text messaging and was unaware of Parra's acts.

Although the prosecutor was not required to establish a motive for the shooting, Lopez testified that there was a tension during the trip to the liquor store and that Parra returned to the Lopez residence driving quickly over speed bumps. This evidence permits a reasonable inference that Parra harbored hostility or anger toward Hunt.

It also matters not that Parra shot Hunt only once. "'"The fact that the shooter may have fired only once and then abandoned his efforts out of necessity or fear does not compel the conclusion that he lacked the animus to kill in the first instance."'"

5

(*People v. Smith*, *supra*, 37 Cal.4th 733, 741.)  Here, after hearing the gunshot, Lopez turned toward Parra and Parke entered the garage.  At that point, Parra chose to run away to avoid arrest.  It is a reasonable inference from Parra's flight that the shooting was not accidental.

Evidence of the February 10, 2011, shooting also permits an inference of intent to kill during the May 25, 2010, shooting.  In each instance, Parra shot and injured an unarmed Hunt from a close distance.  There is sufficient similarly between the two shootings to allow the reasonable inference of intent.  (*People v. Thomas* (2011) 52 Cal.4th 336, 355 [least degree of similarly required to prove intent or mental state].)  The law has long recognized that if a person acts similarly in similar situations, he probably harbors the same intent in each instance.  (*Ibid*.)

In sum, sufficient evidence and reasonable inferences therefrom support the finding of express malice or intent to kill.  Evidence of motive or angry words accompanying the shooting is not required.  (*People v. Smith*, *supra*, 37 Cal.4th 733, 740 [with few exceptions, motive is not an element of a criminal offense].)

*II.*

Parra argues that insufficient evidence of premeditation and deliberation exists to support each count of attempted murder.  He asserts that there is no evidence of planning activity, motive, or a manner of shooting reflecting a plan to kill, as opposed to a spontaneous, impulsive act.  (*People v. Gonzalez*, *supra*, 54 Cal.4th 643, 663 [discussing "descriptive" categories of evidence set forth in *People v. Anderson* (1968) 70 Cal.2d 15, 26-27, that establish premeditation and deliberation].)  Parra also points to evidence that he informed Parke that he intended to surrender to police, thereby having no motive to eliminate Hunt as a complaining witness.

In *People v. Anderson*, *supra*, 70 Cal.2d 15, 26-27, our Supreme Court identified three categories of evidence relevant to establishing premeditation and deliberation.  (*People v. Gonzalez*, *supra*, 54 Cal.4th 643, 663.)  The categories include: 1) events occurring before the killing that indicate planning; 2) motive to kill; and 3) manner of killing that reflects a preconceived design to kill.  (*Ibid.*)  We apply this

6

descriptive framework to our analysis of evidence supporting a conviction of attempted murder. (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1462-1463, fn. 8, disapproved on other grounds by *People v. Mesa* (2012) 54 Cal.4th 191, 199.)

It is well established that premeditation and deliberation do not require an extended period of time. (*People v. Watkins*, *supra*, 55 Cal.4th 999, 1026.) The test is not the duration of time, but the extent of the reflection. (*Ibid.*)

Sufficient evidence and all reasonable inferences therefrom support the findings of premeditation and deliberation for each count. Parra and Hunt were not known to carry firearms. On May 25, 2010, and February 10, 2011, Parra armed himself with a loaded weapon and shot an unsuspecting Hunt. (*People v. Watkins*, *supra*, 55 Cal.4th 999, 1026 [evidence of planning by carrying a loaded, concealed pistol]; *People v. Steele* (2002) 27 Cal.4th 1230, 1250 ["defendant carried the fatal knife into the victim's home in his pocket, which makes it 'reasonable to infer that he considered the possibility of homicide from the outset'"].)

Parra had sufficient time to reflect on killing Hunt. The three men socialized in the Lopez garage for three hours, consuming alcohol and listening to music; they also traveled to the liquor store several times to purchase beer. Prior to the second shooting, Parra had nearly nine months to consider killing Hunt.

The awkward tension in the vehicle during the return from the liquor store permits the reasonable inference that Parra harbored anger or hostility toward Hunt. Prior to the second shooting, Parra had a motive to kill Hunt as a complaining witness.

Finally, Parra's manner of shooting Hunt supports the finding that Parra acted with premeditation and deliberation. Hunt was engaged in text messaging, unaware that Parra was about to shoot him. From a close distance, Parra shot Hunt in the neck, a vital body area. During the second encounter, Parra shot Hunt from a distance of 12 to 15 feet away, striking him twice in the back and arm. Hunt heard a bullet pass by his head before it struck and shattered the liquor store window. Parra chased after Hunt as he ran from Parra. Though Hunt and Ricky ran together, none of the bullets struck Ricky.

7

Following each shooting, Parra did not assist his victim but chose to flee, permitting the reasonable inference that the shootings were not accidental.

In sum, there is sufficient evidence of premeditation and deliberation pursuant to an *Anderson* analysis. The trier of fact was not required to accept as true Parra's self-serving statement to Parke that he intended to surrender to police.

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

8

Bruce F. Marrs, Judge

Superior Court County of Los Angeles

_____

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, for Plaintiff and Respondent.