Filed 1/22/16  P. v. Aldana CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESUS ANTONIO ALDANA,<br><br>    Defendant and Appellant. | Case No. B258749<br><br>(Los Angeles County<br>Super. Ct. No. PA072310) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dalila C. Lyons, Judge.  Affirmed.

California Appellate Project, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jesus Antonio Aldana was convicted of attempted willful, deliberate, and premeditated murder (two counts), assault with a deadly weapon (three counts), burglary, and corporal injury to a cohabitant. He challenges the sufficiency of the evidence to support his conviction of one count of attempted premeditated murder. There was ample evidence of Aldana's planning, motive, and manner of attempted killing to prove premeditation and deliberation, and thus we affirm.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), we find the evidence established the following:

1. *Trial Evidence.*

Defendant Aldana and Ana D. were in a relationship that lasted for three and a half years before it ended abruptly in August of 2011 when Aldana attacked Ana. At that time, Ana and Aldana shared a two-bedroom apartment with Christian A., his girlfriend Cynthia S., and their one-year-old son Gabriel.

When Ana came home to the apartment on August 18, 2011, Aldana grabbed her arm and pushed her into their bedroom, where he began to punch her in the head. Christian heard the commotion and started knocking on their bedroom door while Cynthia called the police. When Aldana opened the door, Christian told him he was no longer welcome in the apartment. Aldana realized that the police were on their way and he fled. Aldana did not return or contact anyone in the apartment until the night of the incident at issue.

On December 28, 2011, at about 11:00 p.m., Ana was sitting on the couch alone in the living room watching television when Aldana walked in through the unlocked front door. Christian, Cynthia, and Gabriel had already retired to their room for the night. Ana testified that when Aldana saw her, he said "[h]ere you are, you damn woman," held her down, and began stabbing her with a knife taped to his right hand. Aldana told her, "No one is going to help. You're going to die here." At that point Ana started to scream for Christian. Hearing his name, Christian came out of his bedroom and walked into the living room where he saw Aldana stabbing Ana. Christian grabbed Aldana by the waist,

2

picked him up, and pushed him to the side. Ana hit Aldana on the head with a small fan and then ran to her bedroom. Aldana then grabbed Christian and threw him onto the couch, yelling at Ana that she was going to die and telling Christian, "This happens to the dogs who fail me." Aldana stabbed Christian repeatedly.

Cynthia entered the living room in time to see Christian pull Aldana off Ana and then attack Christian. Aldana held Christian down with his left hand while he stabbed him repeatedly with his right hand. Cynthia testified that Aldana told Christian in Spanish: "I'm going to kill you, dog." Ana hit Aldana over the head with a fan, but it did not stop the attack. Cynthia then grabbed a stereo speaker and smashed it on top of Aldana's head. After he was hit, Aldana "kind of stopped." Aldana stood up and told Christian, "I'm going to take what you love," and turned to Gabriel, who had walked out of his parents' bedroom. When Aldana took a few steps toward Gabriel, Christian grabbed Aldana by his sweater and tried to pull Aldana back towards him. As Aldana removed the sweater, Christian saw that Aldana had a knife taped to his right hand. Christian unsuccessfully attempted to grab the knife from Aldana as they continued to fight. Christian eventually succeeded in pushing Aldana out of the apartment.

Ana was hospitalized from December 28th until January 5th. She had been stabbed four times in the back, puncturing her lungs, and had a seven to eight inch long cut on her arm. She required surgery on her lungs, hand, and arm, and was out of work for three months. Christian had been stabbed more than ten times. He suffered stab wounds to his head, face, chest, and arms which required multiple staples and stitches, with about twenty stitches and staples in his arm alone.

2. *Verdict and Judgment*.

Aldana was tried and convicted of charges stemming from the incidents in both August and December 2011.[1] With respect to Ana, the jury found Aldana guilty of attempted premeditated murder, corporal injury to a cohabitant, burglary, and assault with a deadly weapon. (Pen. Code, §§ 664, 187, subd. (a), 273.5, subd. (a), 459, 245,

---

[1]     This appeals arises solely out of the events that occurred on December 28, 2011.

3

subd. (a)(1)).[2]  With respect to Christian, the jury found Aldana guilty of assault with a deadly weapon and attempted premeditated murder.  (§§ 245, subd. (a)(1), 664, 187 subd. (a).)  Aldana was also convicted of assault with a deadly weapon against Gabriel. (§ 245, subd. (a)(1).)

The jury also found to be true the alleged special enhancements for personal infliction of great bodily injury and personal use of a deadly weapon.  (§§ 12022.7, subds. (a), (e), 12022, subd. (b)(1).)  Aldana was sentenced to a total term of life imprisonment plus fifteen years in state prison.

## CONTENTION

Aldana contends there was insufficient evidence to support his conviction for the attempted premeditated murder of Christian.

## DISCUSSION

Aldana does not dispute that there was sufficient evidence to support his conviction of having attempted to murder Christian.  However, he contends there was insufficient evidence that this attempted murder was deliberate and premeditated.  There is no merit to this claim.

1. *Applicable law.*

"Review on appeal of the sufficiency of the evidence supporting the finding of premeditated and deliberate murder involves consideration of the evidence presented and all logical inferences from that evidence in light of the legal definition of premeditation and deliberation . . . .  Settled principles of appellate review require [the court] to review the entire record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—from which a reasonable trier of fact could find that the defendant premeditated and deliberated beyond a reasonable doubt.  [Citations.]  The standard of review is the same in cases such as this where the People rely primarily on circumstantial evidence.  [Citation.]  'Although it is the duty of the jury to acquit a defendant if it finds

[2]  All subsequent undesignated statutory references are to the Penal Code.

4

that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' [Citation.]" (*People v. Perez* (1992) 2 Cal.4th 1117, 1124 (*Perez*).)

In *People v. Anderson* (1968) 70 Cal.2d 15 (*Anderson*), the California Supreme Court discussed the three categories of evidence that are sufficient to sustain a finding of premeditated and deliberate murder[3]: "(1) facts about how and what the defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing—what may be characterized as 'planning' activity; (2) facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that the killing was the result of a 'pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed' [citation]; (3) facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2)." (*Id*. at pp. 26-27.) The court concluded that a verdict for deliberate or premeditated murder should be upheld where there is "evidence of all three types" or "at least extremely strong evidence of (1) [planning activity] or evidence of (2) [motive] in conjunction with either (1) [planning activity] or (3) [manner of killing]." (*Id. at p*. 27.)

---

[3]    "We do not distinguish between attempted murder and completed first degree murder for purposes of determining whether there is sufficient evidence of premeditation and deliberation. [Citation.]" (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1462, fn. 8, disapproved on other grounds by *People v. Mesa* (2012) 54 Cal.4th 191, 198-199.)

" '*Anderson* did not purport to establish an exhaustive list that would exclude all other types and combinations of evidence that could support a finding of premeditation and deliberation.' " [Citations.] (*People v. Solomon* (2010) 49 Cal.4th 792, 812 (*Solomon*).) "However, '[w]hen the record discloses evidence in all three categories, the verdict generally will be sustained.' " (*People v. Stitely* (2005) 35 Cal.4th 514, 543 (*Stitely*), quoting *People v. Proctor* (1992) 4 Cal.4th 499, 529.) When evidence of all three categories is not present, appellate courts look for very strong evidence of planning or some evidence of motive in conjunction with planning or a deliberate manner of killing. (*People v. Raley* (1992) 2 Cal.4th 870, 887.) Based on the foregoing framework, we discuss evidence of planning activity, motive, and manner of the attempted killing, and conclude that substantial evidence supports the conviction.

2. *Planning.*

Though the evidence of prior planning of attempted murder is not as obvious with respect to Christian as it is to Ana, the evidence that does exist is strong. After Christian pulled Aldana off Ana, Aldana had the opportunity to escape the apartment through the front door, which he had left wide open. Instead, he stayed and started a new attack that was essentially identical in fashion to his attempt on Ana. A reasonable jury could infer, based on these evidentiary facts, that after Christian intervened, Aldana made a plan to kill him and attempted to immediately carry out that plan.

To the extent that Aldana asserts his decision to attack Christian only arose once Christian intervened, the law does not require Aldana to have possessed the intent to kill Christian from the moment he entered the apartment in order to support a finding of premeditation and deliberation. (See, e.g., *People v. Jackson* (1989) 49 Cal.3d 1170, 1200 (*Jackson*) ["[w]hile there is no evidence that defendant contemplated the possibility of murder prior to his encounter with Office Wrede, the fact that defendant followed the retreating officer to the police car and exerted himself in order to obtain the shotgun at a time when the officer was merely using the radio, and then did use the gun against the officer, suggests that defendant in that period of time contemplated killing the officer"]; *People v. Robertson* (1982) 33 Cal.3d 21, 50 ["the jury could have concluded that

6

defendant formed the considered intent to kill both [victims] when each acted in a manner which suggested likelihood that she would report defendant's crime to the police, and that he immediately carried out his intent to prevent disclosure"].) A core principle that has guided appellate courts in assessing the sufficiency of the evidence regarding premeditation and deliberation is that " '[t]he true test is not the duration of time as much as it is the extent of reflection.' [Citations.] [Appellate courts] have observed that '[t]houghts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.' " (*Solomon*, *supra*, 49 Cal.4th at pp. 812-813, quoting *People v. Thomas* (1945) 25 Cal.2d 880, 900.)

Despite the short time that passed between Christian pulling Aldana off Ana and Aldana attacking Christian, Aldana's comments to Christian and his actions in attacking Christian demonstrate Aldana's reflection and calculated judgment to kill Christian. First, Aldana's verbal threats show his plan and premeditation. As in *People v. Felix* (2009) 172 Cal.App.4th 1618, 1626 (*Felix*), this case "involves preoffense words from the perpetrator's own mouth which shed light on the issue of premeditation." In *Felix*, the defendant threatened to kill a man about an hour before he drove to the man's house and fired shots into the master bedroom, which he presumed the man was occupying. (*Id*. at pp. 1625-1626.) In upholding the conviction for premeditated attempted murder, the Court of Appeal noted that "[t]he jury was entitled to give significant weight to [defendant's] verbal expressions of malice made so close in time to the shooting." (*Id*. at p. 1627.) Similarly, in the present case, Aldana told Christian, "I'm going to kill you, dog." Relying on this explicit verbal expression of malice, the jury could properly infer that Aldana had developed a plan to murder Christian.

Second, Aldana's actions and the circumstances in the present case are analogous to those in *People v. Jackson*. In *Jackson,* the Court found the evidence suggested that the defendant was able to quickly form the required intent after the defendant decided to escalate the initial struggle between himself and the officer by employing a gun against the officer, whom he had already overpowered. The Court noted that: "While the evidence of 'prior' planning is somewhat meager, the evidence that exists is strong,

7

especially the testimony regarding defendant's repeated efforts to cock the shotgun and ready it for firing." (*Jackson*, *supra*, 49 Cal.3d at p. 1200.) Similarly, the effort Aldana put into attacking Christian—grabbing and putting him into a vulnerable position and stabbing him continuously even after he had the upper hand—evidences a plan, no matter how impromptu it was. In other words, these actions indicate that not only did Aldana have sufficient time to contemplate murdering Christian, but also that he had made a conscious decision to do so.

Aldana's conduct after the stabbing further tends to show that his attempt to kill Christian was not just a spontaneous explosion of violence. Case law has established that the subsequent conduct of the defendant can be a strong indicator of premeditation. (See e.g., *People v. Mayfield* (1997) 14 Cal.4th 668, 767, abrogated on other grounds by *People v. Scott* (2015) 61 Cal.4th 363) [evidence of premeditation and deliberation included "testimony that after the killing defendant said that 'he had to do it' "]; *Perez*, *supra*, 2 Cal.4th at p. 1128 ["[a]dditionally, the conduct of defendant *after* the stabbing . . . would appear to be inconsistent with a state of mind that would have produced a rash, impulsive killing"].) In this case, after having stabbed Christian more than ten times, Aldana turned his attention to Gabriel, who had come out of his parents' bedroom. Christian testified that Aldana "got off of me, and then he turned his face towards the bedrooms and he sees my little boy standing there. And he yells at me that he was going to kill my boy, because that was going to hurt me." Aldana then moved toward the child. At that point, it was evident that attacking Christian was much more than a knee-jerk reaction Aldana might have had to Christian's initial interference. He was no longer just trying to get Christian out of the way so he could harm Ana, but instead he had focused all his malevolent intent on Christian. Thus, based on Aldana's subsequent conduct, a trier of fact could reasonably conclude that Aldana's decision to murder Christian was not just the result of rash impulse, but a cold and calculated decision.

8

3. *Motive.*

Because Aldana attacked Christian after Christian intervened in the first stabbing by pulling Aldana off Ana, there was also considerable evidence of motive. The record discloses at least two plausible motives Aldana might have had for attempting to murder Christian: to eliminate Christian as a potential witness, and to retaliate against Christian for Christian's interference with Aldana's attack on Ana.

With respect to the first motive, the jury could have inferred that Aldana tried to kill Christian in order to silence him. "Our Supreme Court has recognized that the elimination of a percipient witness is motivation enough in the premeditation and deliberation context." (*People v. Nazeri* (2010) 187 Cal.App.4th 1101, 1118 (*Nazeri*).) In *People v. Pride* (1992) 3 Cal.4th 195 (*Pride*), the court found that since a second victim apparently arrived on the scene and surprised the defendant while he was committing or cleaning up after his crimes against a first victim, a reasonable jury could infer that the defendant killed the second victim so that she could not be a witness against him. (*Id.* at p. 248; see also *Nazeri*, at p. 1118 [where husband stabbed his mother-in-law to death after killing his wife, the jury could reasonably infer a motive to prevent the mother-in-law from testifying against him].) Here, and despite Aldana's bare assertion to the contrary, the evidence shows the same motive. Indeed, the basis for Aldana's main argument on appeal is that he could not have reflected on murdering Christian because he did not expect Christian or anyone else to enter the living room while he was stabbing Ana. Thus, a rational trier of fact could reasonably infer that he intended not to be caught and that when Christian interrupted unexpectedly, Aldana decided to kill him.[4]

As to the second possible motive, the jury could infer that Aldana was angry and wanted to kill Christian because, once again, Christian had disrupted Aldana's attempts to hurt Ana. The record shows that Christian interrupted Aldana's first attack on Ana in August. Then, in December, Christian again interfered as Aldana was trying to murder

---

[4]     Aldana's first attack on Ana in August also sheds light on Aldana's fear of apprehension. When he realized that Cynthia had called the police, he immediately ran out of the apartment and did not return until late December.

9

Ana. Aldana relies on *Hernandez v. McGrath* (E.D. Cal. 2009) 595 F.Supp.2d 1111, to argue that "[t]he motive to respond to violence says nothing about premeditation because it is equally indicative of an unpremeditated, reflexive scenario as opposed to a premeditated one." Aldana omits that *Hernandez* also states that when evidence of a relatively longstanding motive for the crime exists, it "bespeaks the state of mind of [the defendant] to search out the victim and kill him, i.e. a premeditated retaliation." (*Id*. at p. 1132.) On these facts, a reasonable jury could infer that Aldana had a grudge against Christian that resurfaced when Christian again interrupted his attack on Ana.

Aldana attempts to distinguish the present case from *Pride* to argue that he had no motive. However, *Pride* tends to support, not undermine, Aldana's conviction. In *Pride*, the California Supreme Court found persuasive evidence of premeditated murder where the defendant verbally threatened to retaliate against employees who had complained about the defendant's janitorial work several days before two of the employees were murdered. *Pride* illustrates that a threat, followed by subsequent conduct of the defendant in relation to that threat, bears powerfully on the issue of premeditation. (See *Pride*, *supra*, 3 Cal.4th at p. 236; see also *id*. at p. 245 ["The jury could reasonably conclude that [the first victim's] murder was not an amazing coincidence, and that defendant acted on the apparent threat at the earliest possible opportunity."].) "A direct threat to kill, followed by unequivocal actions, provides a particularly strong set of circumstances . . . [tending to show motive]." (*Felix*, *supra*, 172 Cal.App.4th at p. 1625.) Likewise, in the case at bar, the evidence strongly suggests Aldana acted on his threat to kill Christian.

4. *Manner of the Attempted Killing.*

It is well established that when a defendant uses a deadly weapon on a weaker or incapacitated victim, it is reasonable to infer that the defendant made a reasoned decision to kill. (See *People v. Lewis* (2009) 46 Cal.4th 1255, 1292-1293 ["The manner in which [the victim] was killed supported a finding of deliberation and premeditation, because [the victim] had been strangled to the point of unconsciousness and was not breathing vigorously *before* her throat was cut . . . . [and] even if the initial strangulation was

10

spontaneous, the additional act of slashing her throat 'is indicative of a reasoned decision to kill.' "]; *Stitely*, *supra*, 35 Cal.4th at p. 544 [testimony that lethal pressure had been applied to victim's neck "for a 'long' time" suggested that the defendant had "ample opportunity to consider the deadly consequences of his actions"]; *People v. Silva* (2001) 25 Cal.4th 345, 369 ["[t]he manner of the killing—multiple gunshot wounds inflicted on an unarmed and defenseless victim who posed no threat to defendant—is entirely consistent with a premeditated and deliberate murder."].) In other words, when a defendant uses deadly force that is unmatched by his victim, the reasonable conclusion is that the use of the deadly force was the result of a conscious decision to do so.

In the same way, here, the manner in which Aldana carried out the stabbing evidences reflection. The record showed that Aldana had both a vulnerable victim in Christian and time to contemplate his actions. Ana testified that during the struggle between Aldana and Christian, "[Aldana] hit[] him a lot of times, and wanted to keep [Christian] down." Similarly, Cynthia testified to the relentless way in which Aldana struck Christian: ". . . Aldana kept stabbing Christian, and stabbing him, and stabbing him." Not only was Christian unarmed while Aldana possessed a five-inch blade, but Aldana had secured that blade by taping it to his right hand so it could not be grabbed from him. Even though Christian fought to get out from underneath Aldana, and Ana and Cynthia each hit Aldana on the head with an object, Aldana was able to hold Christian down for the entire attack. Based on the foregoing, the jury could reasonably infer that Aldana was already resolute on the use of deadly force to kill Christian, a defenseless victim.

Aldana argues that the "unusually brutal" nature of the stabbings alone cannot constitute substantial evidence of premeditation, and he is correct: " 'If the evidence show[s] no more than the infliction of multiple acts of violence on the victim, it would not be sufficient to show that the killing was the result of careful thought and weighing of considerations.' " (*Anderson*, *supra*, 70 Cal.2d at p. 24-25, quoting *People v. Caldwell* (1965) 43 Cal.2d 864, 869) Here, however, the record tends to demonstrate that Aldana carefully thought out both attacks.

11

In sum, there was sufficient evidence that Aldana premeditated and deliberated his attempted murder of Christian.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        EDMON, P. J.


We concur:



        ALDRICH, J.



        JONES, J.*

_____

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.