Filed 5/5/21  P. v. Villalpando-Lua CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C086245 |
| Plaintiff and Respondent, | (Super. Ct. Nos. STKCRFE20150007169, SF132081A) |
| v. | |
| JUANCARLOS VILLALPANDO-LUA, | |
| Defendant and Appellant. | |

SUMMARY OF THE APPEAL

A jury found defendant Juancarlos Villalpando-Lua guilty of one count of second degree murder (Count One); one count of first degree murder (Count Two); one count of deliberate, willful, and premeditated attempted murder (Count Three), and one count of assault with force likely to cause great bodily injury (Count Five).  The court acquitted defendant on Count Four pursuant to a pretrial motion.

1

The jury also found true various enhancement allegations, including allegations that defendant had been convicted of one charge of first degree murder and another charge of first or second degree murder in the same case, and various allegations regarding the use of firearms during the commission of the crimes. The court sentenced defendant to two consecutive terms of life without the possibility of parole for the first and second degree murder convictions, one consecutive term of life with the possibility of parole for the attempted murder conviction, and 80 years to life for the firearms enhancements and the assault conviction.

On appeal, defendant raises one argument regarding the jury's findings and three regarding his sentence. In his first argument, defendant claims there was insufficient evidence to support the jury's finding that the attempted murder was willful, deliberate, and premeditated. In his second argument, defendant argues the court imposed an unauthorized sentence when it sentenced him to life in prison without the possibility of parole for the second degree murder conviction. In his third argument, defendant claims a three-year enhancement imposed on the attempted murder conviction for the finding that he had furnished a weapon to another pursuant to Penal Code section 12022.4 (statutory section references that follow are found in the Penal Code unless otherwise stated) was unauthorized, because the court had also imposed a 25-year sentence enhancement for that crime pursuant to section 12022.53, subdivision (d). In his fourth argument, defendant argues we must remand this case to the trial court for resentencing so that the court can exercise its discretion and decide whether to strike the sections 12022.53 and 12022.5 enhancements under amendments made to the sentencing law after the trial court rendered its sentence.

We affirm the jury's verdicts and remand the matter for resentencing consistent with this opinion.

## FACTS AND HISTORY OF THE PROCEEDINGS

Given defendant raises only one argument regarding the jury's findings, we include a summary of facts relevant to that argument in our discussion of that issue and summarize procedural aspects of this case here--i.e., the jury's findings and how the court applied those findings during the sentencing phase.

### *Jury Verdicts*

The jury found defendant guilty of one count of second degree murder; one count of first degree murder; one count of deliberate, willful, and premeditated attempted murder; and one count of assault with force likely to cause great bodily injury. Each conviction was for a separate incident on a separate date.

The jury also found true, with respect to the first and second degree murder findings, that defendant had been convicted of one charge of first degree murder and another charge of first or second degree murder in the same case, within the meaning of section 190.2, subdivision (a)(3); and that defendant had been armed with a firearm during the commission of a felony within the meaning of section 12022, subdivision (a)(1). In addition, with respect to the first degree murder, second degree murder, and attempted murder counts, the jury found true that defendant had intentionally and personally used a firearm causing great bodily harm within the meaning of section 12022.53, subdivision (d), and other enhancement allegations set forth in section 12022.53, subdivisions (b), and (c), and section 12022.5, subdivision (a), which carry shorter penalty enhancements. With respect to the attempted murder count, the jury found true that defendant furnished or offered to furnish a firearm to another, within the meaning of section 12022.4.

### *Sentencing*

At the sentencing hearing, the court struck the section 190.2, subdivision (a)(3) special circumstance (multiple murder) finding on the second degree murder conviction,

and stated that the special circumstance could only be charged one time. The court then said that striking the special circumstance finding would not change the sentence imposed for the second degree murder conviction, and that the sentence for the second degree murder conviction would still be life without the possibility of parole. The court then sentenced defendant as follows, with all unstayed terms running consecutively: (1) applying the section 190.2, subdivision (a)(3), finding on the first degree murder conviction to determine the sentence for both the first and second degree murder convictions, two consecutive terms of life without the possibility of parole; (2) one term of life with the possibility of parole for the attempted murder conviction; and (3) 80 years to life comprised of 25 years to life for each of the three section 12022.53, subdivision (d) enhancements (on both murder charges and the attempted murder charge), three years for the section 12022.4 enhancement (on the attempted murder charge), and two years for the assault with force likely to cause great bodily harm charge. The court also imposed but stayed the section 12022.53, subdivisions (b) and (c), and section 12022.5, subdivision (a), enhancements for the two murder convictions and the attempted murder conviction. The court struck the section 12022, subdivision (a)(1), enhancements to the murder convictions, pursuant to section 1385, in the interest of justice.

DISCUSSION

I

*Sufficient Evidence Supports the Jury's Finding that the Attempted Murder Was Willful, Deliberate, and Premeditated*

Defendant argues there was insufficient evidence to support the jury's finding that the attempted murder he committed was willful, deliberate, and premeditated.

*Additional Background Facts*

Defendant shot Marcos Reyes on July 18, 2015, in a slough near Aurora and East Hazelton in Stockton, where homeless people camp.

4

Marcos Reyes, the victim of the attempted murder charge told the jury about the day defendant shot him.

He said that in July 2015, he was living under a bridge--in the slough--near Aurora in Stockton. A woman named Noemi Rivera was living in the area with a man named Juan. She was moving away from Juan's, and Reyes was helping her get some suitcases which he was letting her store at his encampment for safe keeping. Juan arrived. There was an argument between Reyes and Juan, and they fought. Juan tried to use a knife, but Reyes took it from him and the fight stopped. After the fight, Reyes accompanied Rivera to the store.

When Reyes and Rivera returned to the slough, Juan was there and he had a gun. Defendant was with Juan. Juan shot at Reyes's head but missed, because Reyes hid behind a post. Juan then gave the gun to the defendant, who fired the gun, shooting Reyes in the stomach. Reyes had never had any problems with the defendant before. The defendant and Juan then left.

Reyes walked towards the street to get help; he was bleeding and starting to faint. An ambulance took Reyes to the hospital, where he stayed for a week.

At trial, the parties stipulated that a detective would have testified that he observed Juan's trial in March 2017, and at that trial Reyes testified (1) Juan had shot at him first, but missed; and (2) defendant then took the gun from Juan and shot Reyes in the stomach

An officer who investigated the Reyes shooting saw an expended shotgun shell near a cement pillar with a chip mark in the pillar that was consistent with the pillar being struck by something hard.

Doctor Jonathan Lu, who treated Reyes at the hospital, testified that he rated Reyes as a tier 1 trauma patient, which describes patients with the most severe injuries. He testified that Reyes had a blast injury to his abdomen and lower chest, which was centered near his belly button and radiated out. Reyes had a gash or perforation to his stomach, some small injuries to his bowel and small intestine, and an injury to his colon.

5

The penetrating trauma went all the way into Reyes's abdominal cavity, and there were pellets throughout the cavity. Dr. Lu testified that Reyes's wound was significant and could have caused death.

A paramedic who assessed Reyes at the place of the shooting testified that it looked like the injury to his abdomen was caused by "birdshot"--there was one larger hole with a disbursement of little holes around it.

The doctor who performed the autopsy of defendant's first degree murder victim said the victim in that incident, Jovanny Moran, was shot with birdshot and died as a result of injuries sustained from a gunshot wound to his abdomen.

The jury listened to an interview between defendant and detectives and were given a transcript of the recording. During the interview, defendant did not admit to shooting Reyes, but he did admit to giving Juan the gun, adding he advised Juan to not "think twice about it" and that he "was like, '[y]ou gonna do what you're gonna do. Do it.' "

### *Sufficient Evidence Supports the Jury's Finding*

This court's role in reviewing a challenge to the sufficiency of evidence is limited. (*People v. Smith* (2005) 37 Cal.4th 733, 738.) "To assess the evidence's sufficiency, we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) In assessing the evidence, "we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) This is so, because "it is the exclusive province of the trial judge or jury to determine the credibility of a witness and

6

the truth or falsity of the facts on which that determination depends." (*Ibid.*) As such, "[c]onflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment." (*People v. Maury* (2003) 30 Cal.4th 342, 403.) And, "[a] reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. (*People v. Bolin* (1998) 18 Cal.4th 297, 331 [].)" (*Zamudio*, *supra*, 43 Cal.4th at p. 357.)

"We do not distinguish between attempted murder and completed first degree murder for purposes of determining whether there is sufficient evidence of premeditation and deliberation." (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1462, fn. 8.) Case law defining premeditation and deliberation in the context of first degree murder define the terms as, "considered beforehand" and a "careful weighing of considerations in forming a course of action," respectively. (*People v. Salazar* (2016) 63 Cal.4th 214, 245, internal citations and quotation marks omitted.) It clarifies that premeditation and deliberation need not occur over an extended period of time, and can be the result of a rapid cold and calculated judgment. (*Ibid.*) However, the "standard is not met by showing only that a defendant acted willfully and with specific intent to kill. 'By conjoining the words "willful, deliberate, *and* premeditated" in its definition and limitation of the character of killings falling within murder of the first degree the Legislature apparently emphasized its intention to require as an element of such crime substantially more reflection than may be involved in the mere formation of a specific intent to kill.' (*People v. Thomas* (1945) 25 Cal.2d 880, 900 [], italics added.)" (*People v. Banks* (2014) 59 Cal.4th 1113, 1153.)

In his argument that there was insufficient evidence to establish premeditation and deliberation in the attempted murder of Reyes, defendant points to the type of evidence our Supreme Court identified in *People v. Anderson* (1968) 70 Cal.2d 15. Specifically, in *Anderson*, the Court observed, "[t]he type of evidence which this court has found

7

sufficient to sustain a finding of premeditation and deliberation falls into three basic categories: (1) facts about how and what defendant did prior to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing -- what may be characterized as 'planning' activity; (2) facts about the defendant's prior relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim . . . ; (3) facts about the nature of the killing from which the jury could infer that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way . . . . ¶ Analysis of the cases will show that this court sustains verdicts of first degree murder typically when there is evidence of all three types and otherwise requires at least extremely strong evidence of (1) or evidence of (2) in conjunction with either (1) or (3)." (*Anderson, supra,* 70 Cal.2d at pp. 26-27.) Defendant argues that (1) the only plan that Juan and defendant appeared to have is that Juan would use the gun to "scare" Reyes; (2) defendant had no personal motive to kill Reyes; and (3) the fact that defendant shot Reyes in the stomach and not a more lethal location indicates he did not intend to kill Reyes.

Accordingly, defendant suggests, there was insufficient evidence that defendant or Juan acted with deliberation or premeditation.

To begin with, "[t]he *Anderson* analysis was intended only as a framework to aid in appellate review; it did not propose to define the elements of first degree murder or alter the substantive law of murder in any way . . . . The goal of *Anderson* was to aid reviewing courts in assessing whether the evidence is supportive of an inference that the killing was the result of preexisting reflection and weighing of considerations rather than mere unconsidered or rash impulse. [Citation] ¶ In identifying categories of evidence bearing on premeditation and deliberation, *Anderson* did not purport to establish an exhaustive list that would exclude all other types and combinations of evidence that could

8

support a finding of premeditation and deliberation. [Citation] . . . . It is thus evident from the court's own words that it was attempting to do no more than catalog common factors that had occurred in prior cases. The *Anderson* factors, while helpful for purposes of review, are not a sine qua non to finding first degree premeditated murder, nor are they exclusive." (*People v. Perez* (1992) 2 Cal.4th 1117, 1125.)

Additionally, defendant is incorrect in arguing the *Anderson* factors remain unsatisfied. With respect to planning activity, defendant supplied the gun to be used in the incident and admitted he advised Juan to not "think twice about" using the gun on Reyes, and told him, " '[y]ou gonna do what you're gonna do. Do it.' " This shows defendant planned for him and Juan to arrive with the gun and for someone to shoot Reyes. As to the motive, while defendant might not have had personal issues with Reyes, he was part of a mission to shoot Reyes. The jury could have easily concluded that when Juan missed Reyes, defendant decided he needed to finish the job to prevent future problems with Reyes or eliminate Reyes as a witness to Juan's assault with a firearm. Finally, as to the manner of the attempted killing, the doctor who treated Reyes testified that the shot to Reyes's abdomen could have killed him and there were multiple injuries from a scattering of pellets within Reyes's abdominal cavity. Additionally, both Reyes's injury and the earlier the first degree murder victim's lethal injury were gunshot wounds to the abdomen with birdshot. The jury could have easily decided that in both aiming at Reyes's abdomen and using a specific type of ammunition, defendant acted with the intention of causing lethal injury to Reyes.

There was sufficient evidence to support the jury's finding that the attempted murder was willful, deliberate, and premeditated. The jury had ample reason to believe that when Juan's shot missed Reyes, defendant quickly but calmly decided he needed to finish the job then acted on that decision in a way that could easily have killed Reyes.

9

## II

*The Life Without Possibility of Parole Sentence for the Second Degree Murder Charge Was Unauthorized*

Defendant argues, and the People agree, that once the trial court struck the multiple murder finding on the second degree murder charge, it could not then apply 190.2, subdivision (a)(3) to the second degree murder conviction and impose a sentence of life without the possibility of parole for that crime. Both parties also agree that the correct sentence for the second degree murder conviction is 15 years to life. This is correct.

### *Additional Background*

Counts One and Two of the information alleged defendant had committed first-degree murder. Both counts also included special allegations that, in the proceeding, defendant would be convicted of more than one offense of murder as contemplated by Penal Code section 190.2, subdivision (a)(3).

For both Counts One and Two, the court provided the jury forms where the jury could indicate it found defendant guilty or not guilty of first degree murder, and forms where it could find defendant guilty of second degree murder. For each of the murder charges, the verdict forms also contained a form allowing the jury to decide whether it found true or not the allegation that defendant to the proceeding had been convicted of more than one murder within the meaning of section 190.2, subdivision (a)(3). The form for each count stated the jury would complete the form, "[u]pon finding of Guilty to Murder in the First Degree only."

On Count One, the jury found the defendant not guilty of first degree murder but guilty of second degree murder. Then, it filled out the form indicating it found the section 190.2, subdivision (a)(3), special circumstance to be true for Count One. On Count Two, the jury found defendant guilty of first degree murder. Then, it filled out the

form indicating it found the section 190.2, subdivision (a)(3), special circumstance to be true for Count Two.

At the sentencing hearing, the court stated that, "pursuant to the case of [*People v. Avena* (1996) 13 Cal.4th 394, 425], the Court needs to make a correction in the charging document. The one, the special circumstance of the 190.2(a)(3) only should have been charged one time. It doesn't change the facts or the sentencing, but that case says it only should be charged one time in the information. So the Court is going to strike that allegation for Count One, but it still attaches to Count One and Two for the life without the possibility of parole." The court then sentenced the defendant to a term of life without the possibility of parole for Count One (the second degree murder conviction), and to a consecutive term of life without the possibility of parole for Count Two (the first degree murder conviction).

Section 190, subdivision (a), specifies that "murder in the *first degree* shall be punished by death, imprisonment in the state prison for life without the possibility of parole, or imprisonment in the state prison for a term of 25 years to life. The penalty to be applied shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5." (Italics added.) As applicable here, section 190.2, subdivision (a)(3), states that, "[t]he penalty for a defendant who is found guilty of murder in the *first degree* is death or imprisonment in the state prison for life without the possibility of parole if one or more of the following . . . has been found . . . to be true: [¶] . . . [¶] The defendant, in this proceeding, has been convicted of more than one offense of murder in the first or second degree." (Italics added.) Section 190, subdivision (a), indicates that, absent circumstances not applicable here, "every person guilty of murder in the *second degree* shall be punished by imprisonment in the state prison for a term of 15 years to life." (Italics added.)

Under the plain language of section 190.2, the penalty of life without the possibility of parole applies when a defendant is "found guilty of *murder in the first*

11

*degree*" (italics added) and the jury finds the defendant in the proceeding is guilty of another murder. Though a court can impose that penalty for a first degree murder conviction if the defendant has been convicted of second degree murder, the statute does not say a court can impose the penalty if the reverse is true. If the penalty was intended to be imposed for second degree murder convictions as well as for first degree murder convictions, presumably section 190.2, subdivision (a)(3), would indicate the sentence applies to second degree murder, or section 190, subdivision (a), would indicate the penalties described in 190.2 apply to second degree murder convictions. As neither statute contains such an indication, the application of a penalty of life without the possibility of parole was incorrect here. (See *Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 576 ["When the Legislature 'has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.' [Citations.]"]; see also *People v. Barnwell* (2007) 41 Cal.4th 1038, 1047-1048 ["The trial court sentenced him to death on the first degree murder counts and to life imprisonment without possibility of parole on the second degree murder count. As the People concede, the second degree murder sentence is error"].)

The correct sentence for the second degree murder finding here is 15 years to life plus enhancements, and we direct the trial court to correct the sentence for Count One accordingly. (§ 190, subd. (a); see also *People v. Barnwell, supra,* 41 Cal.4th at pp. 1047-1048.)

## III

*The Trial Court Should Have Stayed the Three-Year Enhancement Imposed Due to the Section 12022.4 Finding*

Defendant argues that, pursuant to section 12022.53, subdivision (f), the three-year-enhancement term added to his sentence for the attempted murder conviction should have been stayed rather than added to his prison term. The People agree. We agree.

12

In addition to finding defendant guilty of the attempted murder count (Count Three), the jury found to be true multiple use-of-firearm enhancement allegations, under sections 12022.5, 12022.53, and 12022.4. In applying additional sentencing for the enhancement findings, the court imposed a consecutive term of 25 years to life for the section 12022.53, subdivision (d), finding, then imposed but stayed the lesser terms provided for under section 12022.53, subdivisions (b) and (c), and section 12022.5, subdivision (a). The court then imposed and added a consecutive term of three years-- i.e., did not stay the term--for the section 12022.4 finding.

Section 12022.53, subdivision (f), states, "[a]n enhancement involving a firearm specified in Section 12021.5, 12022, 12022.3, 12022.4, 12022.5, or 12022.55 shall not be imposed on a person in addition to an enhancement imposed pursuant to this section." When a jury makes multiple enhancement findings identified in section 12022.53, subdivision (f)--including, like here, a section 12022.4 finding and a section 12022.53, subdivision (d), finding--the trial court should impose the longest enhancement term that attaches to those findings, then impose but stay all remaining enhancement terms. (See *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1130 ["We conclude section 12022.53 requires that, after a trial court imposes punishment for the section 12022.53 firearm enhancement with the longest term of imprisonment, the remaining section 12022.53 firearm enhancements and any section 12022.5 firearm enhancements that were found true for the same crime must be imposed and then stayed"].) Here, the 25-year term that attaches for a section 12022.53, subdivision (d), finding is clearly longer than the three-year term that attaches for a section 12022.4 finding.

We direct the trial court revise its sentence to stay the three-year enhancement added to the attempted murder count, Count Three, for the section 12022.4 enhancement.

13

## IV

### *Senate Bill 620 Amendments to Sentencing Enhancements*

While this appeal was pending, our Legislature enacted Senate Bill No. 620 (SB 620; Stats. 2017, ch. 682, § 2, effective Jan. 1, 2018), which now gives trial courts discretion to strike firearm enhancements under sections 12022.5 and 12022.53. (§§ 12022.5, subd. (c), 12022.53, subd. (h) ["The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law"].)

SB 620 applies retroactively. (*People v. Woods* (2018) 19 Cal.App.5th 1080, 1090-1091; *In re Estrada* (1965) 63 Cal.2d 740, 744.) Here, the amendment took effect before defendant's conviction became final on appeal, and therefore SB 620 applies. (See *People v. Vieira* (2005) 35 Cal.4th 264, 305-306.)

Remand is required to allow the trial court to consider exercising its discretion, unless the record reveals a clear indication that the trial court would not have reduced the sentence even if it had discretion to do so at the time of sentencing. (*People v. Almanza* (2018) 24 Cal.App.5th 1104, 1110.)

The People argue remand is not needed because there is no reason to believe that the trial court would exercise its discretion to strike defendant's firearm enhancements. Though we agree it appears likely the trial court would not have struck the enhancements had it been given the opportunity, there is enough ambiguity in the sentencing record that we cannot say the trial court "clearly indicated" it would not have stricken the enhancements if given the opportunity. (See *People v. Jones* (2019) 32 Cal.App.5th 267, 272-273 ["We are not required to remand to allow the court to exercise its discretion if 'the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken [the] . . . enhancement' even if it

14

had the discretion.  (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425 [231 Cal. Rptr. 3d 443]"].)

First, as indicated in sections II and III, the trial court made some errors during sentencing, indicating that there was some underlying confusion as to the proper sentencing scheme given defendant's offenses and the enhancements.  Second, the trial court did elect to strike the enhancements imposed to the first degree and second degree murder convictions under section 12022, subdivision (a)(1), pursuant to section 1385, "in the interest of justice."  Third, twice while it imposed the section 12022.53, subdivision (d), penalty enhancements, the trial court stated that the sentences were mandatory, and one of those times the trial court stated, "[a]ll these sentences are mandatory."

As such, though other factors suggest the trial court might not have stricken the enhancements had the discretion to do so existed at the time--e.g., it identified a variety of aggravating factors and called the defendant a "cold-blooded killer," it selected the upper term for the stayed section 12022.5, subdivision (a) enhancements--we cannot say that *clearly* the trial court would not have exercised its discretion to strike any of the enhancements had that discretion existed at the time of sentencing.  As such, we remand for the trial court to exercise its discretion as to whether to strike the firearm sentencing enhancements imposed for Counts One, Two, and Three.

DISPOSITION

We affirm the jury's guilty verdict and remand for resentencing consistent with this opinion.

                                                 _____
                                                 HULL, Acting P. J.

We concur:

_____
MURRAY, J.

_____
RENNER, J.

16