Filed 10/28/21  P. v. Alfaro CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. DARIO ALFARO, Defendant and Appellant. | B306009 (Los Angeles County Super. Ct. No. BA459245) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge.  Affirmed.

Paul Kleven, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Dario Alfaro guilty of willful, deliberate, and premeditated attempted murder[1] with true findings on gang and principal gun use allegations. On appeal, he contends there was insufficient evidence to support the premeditation finding and that the jury was misinstructed on that issue. We disagree and affirm the judgment.

## BACKGROUND

I.     The attempted murder

Alfaro was jointly tried with fellow Easy Rider gang members Ronald Hernandez and Rafael Rivera for attempted premeditated murder and shooting at an occupied vehicle.[2] Alfaro's gang moniker was Lil Boy, Hernandez's gang monikers were Stranger and Muerto, and Rivera's gang moniker was Drowzy.

The victim testified that on July 13, 2017, at 2:20 p.m., he was driving his Mustang to a friend's house when he heard someone yell. Thinking that a friend might be calling to him, he made a U-turn and stopped in front of an apartment building where he had seen three men standing, two of whom the victim identified as Hernandez and Rivera. The victim recognized Hernandez because they had gone to school together.

Hernandez and Rivera walked up to the victim, who asked, " 'What's up?' " Hernandez and Rivera threw gang signs and

---

[1] We hereafter refer to willful, deliberate, and premeditated attempted murder as attempted premeditated murder.

[2] This Division affirmed the judgments of conviction as to Rivera in *People v. Rivera* (Aug. 20, 2020, B297551) [nonpub. opn.] and as to Hernandez in *People v. Hernandez* (Feb. 10, 2021, B303457) [nonpub. opn.].

2

replied, " 'Riders.' "  The victim did not associate with gangs, so he drove away.  As he left, Rivera threw something at his car.

About 10 to 15 minutes later, the victim was taking a shortcut through a nearby car wash when he saw Hernandez and Rivera in a Mercedes.  Hernandez was driving the car, and Rivera was in the front passenger seat.  The victim could not tell if anyone else was in the car.  The Mercedes made a U-turn and pursued the victim until the Mercedes was positioned behind the victim's car.  Through his rearview mirror, the victim saw Rivera reach down towards his feet.  Panicked, the victim had jumped the double lines into incoming traffic when he saw the Mercedes moving to the open space on his right.  As the victim was turning onto another street, he heard the Mercedes's engine revving and then the Mercedes hit the back of the victim's car, the victim thought intentionally.  The victim heard at least two gunshots, then about three more.  Three or four bullets struck the victim's car.  The victim was uninjured.

A witness saw the Mercedes crash into the victim's car and someone from the rear passenger side of the Mercedes fire a revolver three to four times at the victim's car.  But the witness could not tell how many people were in the Mercedes and saw none of their faces.

Around the time of these events, Alfaro messaged his girlfriend at 2:32 p.m. that, " 'I'm a call you.  If you get a jail call[,] answer.' "  Later that night, Alfaro told her that he had been with Hernandez and another guy, and they had a fight or altercation with someone.  They chased him in Hernandez's car, crashed into the car, and shots were fired.

The day after the shooting, Alfaro told his girlfriend in text messages that Stranger had gotten locked up and someone had

3

snitched.  He sent her a screenshot of a message from Rivera that said, " 'Strangers got locked up yesterday.  They took his car, raided his pad and all.  Someone followed us and snitched.' " When she asked about the " 'bitch,' "[3] Alfaro responded that he had to move it.  Later, he texted that " 'we moved her.' "  Alfaro also told his girlfriend that they had acquired the gun three days before the shooting.

II.    Communications between defendants and Easy Rider gang members

Evidence was introduced that in the days leading up to the shooting, Alfaro had discussions with Rivera and other gang members about getting a gun.  On the day before the shooting, Rivera complained to Alfaro via Facebook that "Stranger" refused to give the " 'toy' " (referring to a gun) to Rivera.  Easy Rider gang member and shot caller Osbaldo Chavez, whose gang moniker was Kasper, resolved the dispute by designating Alfaro to be " 'on point,' " meaning in charge of the gun.  Kasper instructed that the gun was for emergencies only and that Alfaro should keep it unless either Kasper or "Sparks" (another Easy Rider) approved giving it to someone else.  Alfaro confirmed to Kasper that he had the " 'baby,' " referring to a gun.  Rivera and Alfaro also discussed how the gun is " 'there for when someone needs it' " and that " 'Kasper said it's supposed to be there at the homies' reach in case of anything.' "

On the evening of the shooting, Kaspar and Alfaro messaged each other.  Kaspar asked Alfaro if the " 'girl is cool?' "

---

[3] Alfaro used this word to refer to a gun.

Alfaro responded that he had moved "her to a better spot me and Strange know."[4]

III.    The People's gang expert testimony

The People's gang expert explained that gangs are hierarchical.  At the top is the original gangster or "OG," who can dictate orders to other gang members.  Gang members will share guns and use code words when referring to guns.  Shot callers decide who is "on point," meaning in charge of the gun.

Respect is important to gangs.  If a gang is disrespected, it is vital for the disrespected gang to respond, usually violently.

IV.    The defense

Hernandez testified in his defense.  He admitted he was an Easy Rider gang member.  He also admitted that he had the gun but gave it to Alfaro the morning of the shooting.

The day of the shooting, Hernandez was with Alfaro and Rivera in front of Hernandez's apartment building.  However, Hernandez had walked away to talk to an ex-girlfriend, so he did not witness the verbal exchange with the victim.

Upset because he had argued with his ex-girlfriend, Hernandez asked Alfaro and Rivera to drive with him to a park to drink.  They were in Hernandez's car, with Hernandez in the driver's seat, Alfaro in the backseat, and Rivera in the front passenger seat when they happened upon the victim.  Rivera told Hernandez to " 'pull up on this nigga, I'm going to dump on this fool.' "  Rivera pulled a gun from a black bag and shot out the window.  Alfaro also said he wanted to " 'dump on' " the victim.

---

[4] The gun was never recovered.

Up to that moment, Hernandez did not know there was a gun in the car. Although Hernandez tried to drive in a manner to avoid any confrontation, he accidentally crashed into the victim's car, which was when Rivera shot at the victim.

V.  Verdict and sentence

A jury found Alfaro guilty of attempted premeditated murder (Pen. Code,[5] §§ 664, subd. (a), 187, subd. (a); count 1), shooting at an occupied motor vehicle (§ 246; count 3), and vandalism by graffiti (§ 594, subd. (a); count 4).[6] As to counts 1 and 3, the jury found true gang (§ 186.22, subd. (b)) and principal gun use (§ 12022.53, subds. (b), (c) & (e)) allegations.[7]

On December 11, 2019, the trial court sentenced Alfaro on count 1 to life with a minimum parole eligibility of seven years plus 20 years for the gun enhancement and to a consecutive two years on count 4. The trial court imposed but stayed sentences on the remaining count and enhancements.

**DISCUSSION**

I. There was sufficient evidence to support the premeditation finding, assuming Alfaro was the shooter.

Alfaro contends there was insufficient evidence to support the premeditation finding. His contention proceeds on the

---

[5] All further undesignated statutory references are to the Penal Code.

[6] The jury also found Rivera and Hernandez guilty of attempted premeditated murder with true findings on gang and principal gun use allegations. Personal gun use allegations were never presented to the jury as to any of the three defendants.

[7] Alfaro was found not guilty of count 2. The facts underlying count 4 for vandalism are irrelevant to this appeal, and we therefore do not summarize them.

assumption that the jury found that he was the shooter—even though the prosecutor's theory of the case was that either Rivera or Alfaro could have been the shooter, and the jury found true only principal gun use allegations. Nonetheless, adopting this assumption, we find that there was sufficient evidence to support the premeditation finding.

Murder is of the first degree when it is willful, deliberate and premeditated. (§ 189, subd. (a).) Premeditation and deliberation require more than a showing of intent to kill. (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1069.) A killing is premeditated and deliberate if it is considered beforehand and occurred as the result of preexisting thought and reflection, rather than as the product of an unconsidered or rash impulse. (*People v. Pearson* (2013) 56 Cal.4th 393, 443.) "Deliberation" refers to careful weighing of considerations in forming a course of action; "premeditation" means thought over in advance. (*Ibid*.) However, it is unnecessary to prove the defendant maturely and meaningfully reflected upon the gravity of his act. (§ 189, subd. (d).) Premeditation and deliberation do not require any extended period of time. (*People v. Salazar* (2016) 63 Cal.4th 214, 245.) The issue is not so much the duration of time as it is the extent of reflection, because thoughts may follow each other with great rapidity, and cold, calculated judgment may be arrived at quickly. (*People v. Potts* (2019) 6 Cal.5th 1012, 1027.) Also, courts do not differentiate between completed first degree murder and attempted murder for purposes of determining if there is sufficient evidence of premeditation and deliberation. (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1462, fn. 8, disapproved on another ground by *People v. Mesa* (2012) 54 Cal.4th 191, 199.)

7

Three categories of evidence are especially probative to establish premeditation and deliberation: (1) what was the defendant doing before he committed the crime (planning activity), (2) facts about the relationship between the victim and the defendant (motive), and (3) the manner of killing. (*People v. Potts*, *supra*, 6 Cal.5th at p. 1027; *People v. Anderson* (1968) 70 Cal.2d 15, 26–27 (*Anderson*).) These so-called *Anderson* factors are not all required, are not exclusive, and need not be accorded any particular weight; instead, they are a framework to guide appellate review. (*People v. Morales* (2020) 10 Cal.5th 76, 89.)

Review of the sufficiency of the evidence to support a premeditation finding involves consideration of the evidence presented and all logical inferences in light of the above definitions of premeditation. (*People v. Perez* (1992) 2 Cal.4th 1117, 1124.) " '[W]e review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation]. We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation]. If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

Applying these standards here, there was more than sufficient evidence of all three *Anderson* factors.

First, there was evidence of planning activity. In the days leading to the shooting, Rivera and "Stranger" (inferentially,

8

Hernandez) argued about who would have the gang gun. Kasper dictated that Alfaro would be in charge of the gun, and Alfaro confirmed to Kasper that he had the gun the day before the shooting. To be sure, at that time, Alfaro could not have planned to use the gun the next day against this specific victim. Nonetheless, as the People's gang expert testified and as Kasper said, gang guns were for emergencies. Alfaro thus armed himself in preparation for an emergency, which, it was reasonable to infer, he thought had occurred when he and his codefendants encountered the victim. (See, e.g., *People v. Ramos* (2004) 121 Cal.App.4th 1194, 1208 [gang member armed himself before attending party, showing a "willingness to take immediate lethal action" if need arose].)

And although the incident happened suddenly, there was nonetheless evidence of a plan to shoot the victim. (See, e.g., *People v. Sanchez* (2001) 26 Cal.4th 834, 849 [premeditation established in gang context even though time between seeing victim and actual shooting was brief].) After the victim drove away, Alfaro and the others got into Hernandez's car and pursued him. Hernandez positioned his car so that they were behind the victim, immobilized the victim's car by crashing into it, and a person or persons from inside Hernandez's car fired gunshots at the victim.

There was also evidence that Alfaro and Rivera discussed who would "dump on" the victim, with both men wanting to do it. Alfaro dismisses his statement as the product of an unconsidered or rash impulse that cannot support a premeditation finding. (See, e.g., *People v. Pearson, supra*, 56 Cal.4th at p. 443 [premeditated killing is not one that is unconsidered or done on rash impulse].) But, as we have said, a cold, calculated judgment

may be arrived at quickly.  (*People v. Potts*, *supra*, 6 Cal.5th at p. 1027.)

Moreover, Alfaro and his codefendants had a loaded gun, and the evidence suggested that Alfaro had control of it. Bringing a loaded gun or other weapon to a confrontation shows that the attempted murder was planned.  (See, e.g., *People v. Salazar*, *supra*, 63 Cal.4th at p. 245 [bringing weapon to murder victim's home showed premeditation]; *People v. Lee* (2011) 51 Cal.4th 620, 636 [same].)  Also, hiding the gun after the shooting supported the premeditation finding.  (See, e.g., *People v. Clark* (1967) 252 Cal.App.2d 524, 529.)

Second, there was evidence Alfaro had a motive to shoot the victim.  Alfaro told his girlfriend that there had been an altercation with the victim who had said " 'What's up' " to them. The People's gang expert testified that such a comment could have been perceived as a challenge or as disrespectful.  (See, e.g., *People v. Ramos*, *supra*, 121 Cal.App.4th at p. 1208 [expert testified that gang members are expected to defend fellow gang member who has been disrespected].)  Indeed, defendants perceived the exchange they had with the victim outside the apartment building as disrespectful because Rivera threw something at the departing victim's car.  The victim's perceived slight, per the gang's notions of respect, had to be answered with aggression.

Finally, the manner of the attempted killing supported the premeditation finding.  Alfaro and his accomplices got into Hernandez's car, pursued the victim, and crashed into the victim's car, which the jury could have believed was to immobilize the victim.  Multiple gunshots were fired from Hernandez's car in the victim's direction, striking the victim's car.  (See, e.g., *People*

10

*v. Herrera, supra*, 70 Cal.App.4th at pp. 1463–1464 [dozen shots fired during drive-by shooting evidenced premeditation]; *People v. Bolin* (1998) 18 Cal.4th 297, 332 [firing multiple gunshots at victims supported premeditation finding].)

To be sure, the evidence here is different than in the many cases Alfaro cites involving arguably more horrific evidence. In one, *People v. Romero* (2008) 44 Cal.4th 386, 401, the defendant killed the victim execution style by shooting him in the back of the head and firing a single shot. (Accord, *People v. Brady* (2010) 50 Cal.4th 547, 564 [defendant ensured victim was dead by standing over prone body and firing another shot]; *People v. Martinez* (2003) 113 Cal.App.4th 400 [defendant tried to shoot rival gang member by aiming gun at victim's head and pulling trigger].) Although killing someone execution style may be a quintessential example of a premeditated killing, it is not the only type of killing or attempted killing that will support a premeditation finding, as the other cases we have cited demonstrate. (See, e.g., *People v. Poindexter* (2006) 144 Cal.App.4th 572, 588 ["The manner of killing, while not an execution-style single shot to the head, could still support a finding of premeditation and deliberation, as defendant quickly fired three shots at the victim, with a shotgun, from a relatively close range."].)

In sum, our review of the three *Anderson* factors— planning, motive, and manner of killing—shows that there is more than sufficient evidence that Alfaro acted with premeditation, assuming that the jury found he was the shooter.[8]

---

[8] Alfaro cursorily argues that there was insufficient evidence he was the shooter. Not so. Alfaro was "on point" for

11

II.	There was sufficient evidence to support the premeditation finding if Alfaro was an aider and abettor, and the jury was properly instructed.

Alfaro next contends that if he was *not* the shooter, then there was insufficient evidence he aided and abetted an attempted *premeditated* murder. From this, he makes two arguments. First, the jury should have been instructed that he had to personally premeditate in order to be sentenced to a life term as an aider and abettor. Second, and to the extent his guilt depended on Rivera who, in this scenario we are to assume was the shooter, there was insufficient evidence that Rivera premeditated a murder. Neither argument is persuasive.

A. *Instructional error*

Alfaro contends that the trial court should have sua sponte instructed the jury that an aider and abettor must personally act willfully, deliberately, and with premeditation for the section 664, subdivision (a), allegation to be found true. However, our Supreme Court held to the contrary in *People v. Lee* (2003) 31 Cal.4th 613, 623. In that case, the court described section 664, subdivision (a), as a penalty provision that increases the penalty for attempted murder to life when the attempted murder is premeditated. (*Lee*, at p. 622.) The provision requires only that the murder attempted was premeditated and does not require an

---

the gun; a witness said the shots came from the rear passenger seat, which is where Hernandez said Alfaro was sitting; and Alfaro said he wanted to be the one to "dump on" the victim. Soon after the shooting, Alfaro told his girlfriend that if she got a "jail call," to answer it, and he helped hide the gun. Notwithstanding other evidence showing that Rivera was the shooter, the jury could have believed that one or *both* Rivera and Alfaro shot at the victim.

aider and abettor to attempted murder to personally act with premeditation. (*Id.* at p. 623; accord, *People v. Favor* (2012) 54 Cal.4th 868, 872 [when defendant is tried under natural and probable consequences theory, the jury need not be instructed that a premeditated attempt to murder must have been a natural and probable consequence of the target offense].)

Although Alfaro acknowledges that we are bound by *Lee* (see generally *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), Alfaro tries to distinguish it based on the way in which his jury was instructed. Alfaro's jury was instructed with CALCRIM No. 601, which stated in part, "The attempted murder was done willfully and with deliberation and premeditation if *either the defendant or another perpetrator or aider and abettor or both of them acted with that state of mind.*" (Italics added.) He argues that this language undercut *Lee*'s holding that the jury must find that the attempted murder was premeditated. We disagree. CALCRIM No. 601 as a whole instructed that the jury had to find that the attempted murder was premeditated. At its outset it stated, "If you find the defendant guilty of attempted murder . . . , you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation." Thus, the jury necessarily found that *someone* involved in the attempted murder premeditated. Moreover, the reference to "aider and abettor" in the instruction actually undercuts Alfaro's argument; that is, it told the jury that an aider and abettor could also personally premeditate the attempted murder. Thus, although CALCRIM No. 601 did not tell the jury it *had to* find that any aider and abettor personally premeditated, it suggested it as a possibility.

Alfaro also urges us to ignore *Lee* and instead to follow *People v. Dennis* (2020) 47 Cal.App.5th 838, review granted July

13

29, 2020, S262184.**⁹** The defendant in that case was prosecuted based on the theory that he aided and abetted the actual shooter's attempted premeditated murder by committing a target offense, the natural and probable consequence of which was attempted murder (not attempted premeditated murder). *Dennis*, at page 852, relied on *Alleyne v. United States*, *supra*, 570 U.S. 99, 103, which held that the Sixth Amendment requires any fact that by law increases the mandatory minimum for a crime to be treated as an element of the crime, so it must be submitted to the jury and found true beyond a reasonable doubt. *Dennis*, at page 854, held that the jury had to be instructed that to make the premeditation finding, it had to find that the attempted *premeditated* murder was a natural and probable consequence of the target crime.

Dennis does not apply because Alfaro's jury was not instructed on a natural and probable consequences theory. Rather, Alfaro was tried as a direct aider and abettor. The jury

---

**⁹** *Dennis* followed *People v. Lopez* (2019) 38 Cal.App.5th 1087, review granted Nov. 13, 2019, S258175. As pertinent here, the issue on review in *Lopez*, the lead case, is whether in "order to convict an aider and abettor of attempted willful, deliberate and premeditated murder under the natural and probable consequences doctrine, must a premeditated attempt to murder have been a natural and probable consequence of the target offense? In other words, should *People v. Favor*[, *supra*,] 54 Cal.4th 868 be reconsidered in light of *Alleyne v. United States* (2013) 570 U.S. 99 and *People v. Chiu* (2014) 59 Cal.4th 155?" (<https://perma.cc/2AA2-DPGW> [as of Oct. 27, 2021].) *Chiu*, at pages 158 to 159, held that "an aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable consequences doctrine. Rather, his or her liability for that crime must be based on direct aiding and abetting principles."

was accordingly instructed on the principles of aiding and abetting liability and attempted murder. (CALCRIM Nos. 400, 401, 252, 600.)

Because we are bound by *Lee* and because *Dennis* does not apply, no instructional error occurred under current law.

B. *Any instructional error was harmless.*

Even if we were not bound by *Lee* and even if *Dennis* applied, we would find any instructional error to be harmless beyond a reasonable doubt. (See generally *People v. Aledamat* (2019) 8 Cal.5th 1, 12–13 [instructing on legally inadequate theory is reviewed under *Chapman v. California* (1967) 386 U.S. 18]; *People v. Merritt* (2017) 2 Cal.5th 819, 832 [" '[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.' "].) That is, there was more than sufficient evidence that Alfaro aided and abetted Rivera to commit an attempted murder that they *both* premeditated.

Our discussion of law and facts in Discussion section I applies with equal force here. But, as to the specific issue of Alfaro's status as an aider and abettor to attempted murder, we add that attempted murder "requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee, supra*, 31 Cal.4th at p. 623.) A person aids and abets the commission of a crime when the person, acting with (1) knowledge of the perpetrator's unlawful purpose; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense; (3) by act or advice aids, promotes, encourages, or instigates, commission of the crime. (*People v. Nguyen* (2015) 61

15

Cal.4th 1015, 1054.)  Factors relevant to aiding and abetting are presence at the scene of the crime, companionship, and conduct before and after the offense.  (*Ibid.*)

Alfaro and Rivera were members of the same gang and were hanging out together before the shooting occurred.  The jury thus could have found that Alfaro was with Rivera when the initial exchange with the victim occurred and witnessed the exchange or participated in it.  Indeed, Alfaro told his girlfriend that there had been a fight with the victim, so he had knowledge of it.  Further, the victim saw three men outside the apartment building, which also suggests that Alfaro was aware of the exchange with the victim.  Rivera was directly involved in the initial exchange with the victim and, as the gang expert suggested, Rivera perceived that exchange as disrespecting him and the Easy Riders, so he threw something at the victim's car.

Alfaro then got into the car with Hernandez and, it is reasonable to infer, an angry Rivera.  This suggests that Alfaro and Rivera were not just going to the park to hang out and drink.  The People's gang expert explained that in a context like this a gang member does not get into a vehicle to passively "go along for the ride."  Having believed that the victim disrespected them, Alfaro and Rivera instead were pursuing the victim to defend their gang.  (See, e.g., *People v. Campbell* (1994) 25 Cal.App.4th 402, 409 [accomplice did not just "happen by" crime scene].)

Moreover, Alfaro and Rivera got in a car with Hernandez *and* a gun to pursue the victim.  There was substantial evidence that Alfaro and Rivera knew a gun was in the car.  In the days before this shooting, they had been in a dispute about who would be in control of the gang gun, and Kasper had ordered Alfaro to be "on point."  Hence, if Alfaro was in the car, so was the gun, and

16

Rivera would have known this. Indeed, the victim saw Rivera reach down, inferentially to get the gun, and Hernandez testified that Rivera got the gun from a black bag and shot at the victim, all while declaring his intent to "dump on"—shoot—the victim. At the same time, Alfaro declared *his* intent also to "dump" on the victim. Rivera and Alfaro thus shared, and stated aloud, an intent to kill the victim.

Alfaro's conduct after the shooting also shows he was an aider and abettor. He helped hide the gun.[10] He told his girlfriend he might be going to jail, which shows a consciousness of guilt.

Alfaro's take on this evidence, however, is that the three defendants happened upon the victim, and the attack was just "random." This amounts to an improper request we reweigh the evidence and reevaluate witnesses' credibility. (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

Rather, Alfaro's presence at the scene of the crime, companionship with his fellow gang members, and conduct before and after the offense supported his liability for the offenses as an aider and abettor. Therefore, whether the viability of Alfaro's conviction as an aider and abettor for attempted premeditated

---

[10] Alfaro suggests that hiding the gun merely made him an accessory after the fact and not an aider and abettor. Accessories are person who, *after* a felony has been committed, harbor, conceal or aid a principal in the felony with the intent of helping the principal avoid criminal liability and knowing that a felony has been committed. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 103.) However, Alfaro made no argument in the trial court that he was merely an accessory after the fact, and, as we have said, there was sufficient evidence he was a principal in the crime.

murder hinged on either his personal premeditation or on Rivera's, Alfaro's conviction must stand.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.